**Carmen TORO, Plaintiff,**

v.

**Shirley S. CHATER,[1] Commissioner of Social Security, Defendant.**

**No. 93 Civ. 6563 (HB).**

United States District Court,
S.D. New York.

Sept. 10, 1996.

---

1. Pursuant to Public Law No. 103–296, §§ 105(a)(1), 106)(d), 106(f), effective March 31, 1995, the responsibility for Social Security regulations and adjudications was transferred from the Secretary of Health and Human Services to the Commissioner of Social Security, and this Court may enter a substitution of parties. Accordingly, Shirley S. Chater, Commissioner of Social Security, is hereby substituted for Donna Shalala, Secretary of Health and Human Services, originally named as defendant herein, and "Commissioner" has been used for any references to "Secretary" throughout this Report and Recommendation. *See DeJesus v. Chater,* 899 F.Supp. 1171, 1171 n. 1 (S.D.N.Y.1995).

Guilene Cherenfant, Bronx Legal Services, New York City, for plaintiff.

Sapna V. Raj, Assistant United States Attorney, New York City, for defendant.

### ORDER

BAER, District Judge.

Pursuant to Fed.R.Civ.P. 12(c), both parties to this litigation moved for a judgment on the pleadings. I referred their motions to Magistrate Judge Grubin for resolution. Magistrate Judge Grubin issued an extensive Report and Recommendation dated April 26, 1996 that recommended (1) granting defendant's motion for judgment on the pleadings, and (2) denying plaintiff's motion.

The Report and Recommendation advised the parties of their obligation to file timely objections under 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 6 and 72(b). To date, no objections have been filed and I have found no clear error in the Report and Recommendation of Judge Grubin.

Therefore, defendant's motion for judgment on the pleadings is granted and plaintiff's motion is denied.

SO ORDERED.

### REPORT AND RECOMMENDATION TO THE HONORABLE HAROLD BAER, JR.

GRUBIN, United States Magistrate Judge:

This is an action brought under the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), to review a final decision of the Commissioner of Social Security denying

plaintiff's application for Supplemental Security Income ("SSI") benefits based on disability. The plaintiff, who brought the action *pro se* but is now represented by counsel, and the Commissioner have each moved for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c). For the reasons stated below, I recommend that the Commissioner's motion be granted and the plaintiff's denied.

*Applicable Principles of Law*

For purposes of the Act, a person is considered disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[2] That impairment must be of such severity that the person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The evidence that must be considered in determining whether an individual is disabled includes: (1) objective medical facts; (2) diagnoses and medical opinions based on such facts; and (3) subjective evidence of disability, including any pain experienced by the individual and his or her educational background, age and work history. *Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 259 (2d Cir.1988); *Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2d Cir.1983) (per curiam); *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 642 (2d Cir.1983); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980). The Commissioner shall consider "all evidence available in such individual's case record, and shall develop a complete medical

history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability," and "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(G). The Commissioner is to give a treating physician's opinion on the nature and severity of the applicant's impairments "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the Commissioner determines that a treating physician's opinion is not entitled to controlling weight, she must nevertheless determine what weight to give it by considering five enumerated factors— (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, *i.e.,* the extent to which the source presents relevant evidence, particularly medical signs and laboratory findings, to support the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the physician—and must "give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d). *See Schisler v. Sullivan,* 3 F.3d 563, 567–69 (2d Cir.1993) (explaining and upholding regulations superseding what was known in the Second Circuit as the "treating physician rule"); *see also Diaz v. Shalala,* 59 F.3d 307, 312–13 (2d Cir.1995).

With respect to a claimant's subjective complaints of pain, 42 U.S.C. § 423(d)(5)(A) provides, in pertinent part:

---

**2.** Since the standards for eligibility for supplemental security income benefits and judicial review thereof are virtually identical to the standards in disability insurance cases, decisions rendered under 42 U.S.C. § 423 are also applicable to cases arising under 42 U.S.C.

§ 1382c(a)(3). *Hankerson v. Harris,* 636 F.2d 893, 895 n. 2 (2d Cir.1980); *Rivera v. Harris,* 623 F.2d 212, 216 n. 4 (2d Cir.1980). *See also, e.g., Sullivan v. Zebley,* 493 U.S. 521, 525 n. 3, 110 S.Ct. 885, 888 n. 3, 107 L.Ed.2d 967 (1990).

An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph ... would lead to a conclusion that the individual is under a disability.

*See also* 20 C.F.R. §§ 404.1529, 416.929. When a medically determinable impairment exists that reasonably could be expected to produce the pain alleged, objective medical evidence must be considered in determining whether a disability exists, whenever such evidence is available. 20 C.F.R. §§ 404.1529(b), 416.929(b). If symptoms suggest a greater impairment than can be shown by objective evidence alone, consideration will also be given to such factors as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and adverse side-effects of medication that claimant has taken to alleviate the symptoms; (5) treatment, other than medication, for relief of pain or other symptoms; and (6) any measures which claimant uses or has used to relieve the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An Administrative Law Judge may reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, *see Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979), but must set forth his or her reasons "with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir. 1984).

The Commissioner has established a five-step sequence to be used in evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920. *See Sullivan v. Zebley,* 493 U.S. at 525, 110 S.Ct. at 888–89; *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987); *Bowen v. City of New York,* 476 U.S. 467, 470, 106 S.Ct. 2022, 2024–25, 90 L.Ed.2d 462 (1986). As explained by the Court of Appeals in *Berry v. Schweiker,* 675 F.2d 464 (2d Cir.1982) (per curiam), the five steps are as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Id.* at 467. The claimant bears the burden of proof as to the first four steps, the Commissioner as to the fifth. *Id.; see also Diaz v. Shalala,* 59 F.3d at 311 n. 2.

In reviewing a denial of disability benefits, the court is not empowered to make a *de novo* determination of whether the claimant is disabled. *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991); *Wagner v. Secretary of Health and Human Services,* 906 F.2d 856, 860 (2d Cir.1990); *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990). Rather, it is the function of the Commissioner, and not the reviewing court, to pass on the credibility of witnesses, including the claimant, and to

resolve material conflicts in the testimony. *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426–27, 28 L.Ed.2d 842 (1971); *Aponte v. Secretary, Dept. of Health and Human Services of U.S.*, 728 F.2d 588, 591 (2d Cir.1984); *Carroll v. Secretary*, 705 F.2d at 642; *Marcus v. Califano*, 615 F.2d at 27. The court's function is limited to assessing whether the Commissioner applied the proper legal standards in making a determination and whether that determination is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g), 1383(c)(3); *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir.1989); *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987).

■ In that regard, the Supreme Court has defined "substantial evidence" as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). *See also Diaz v. Shalala*, 59 F.3d at 314; *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which de- tracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990). However, the Commissioner's finding will be sustained if supported by substantial evidence even where substantial evidence may support the plaintiff's position and despite that the court's independent conclusion based on the evidence may differ from the Commissioner's. *Alston v. Sullivan*, 904 F.2d at 126; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982), *cert. denied*, 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1982).

### Procedural Background

Plaintiff applied for SSI benefits on September 5, 1991, alleging disability as of November 10, 1989 due to "back problems." R 36.[3] The application was denied on January 9, 1992 and denied on reconsideration on April 13, 1992. R 40–51. At plaintiff's request a hearing was held, before Administrative Law Judge Joseph R. Faraguna ("the ALJ") on July 7, 1992, at which plaintiff was represented by an attorney and testified through a Spanish language interpreter. R 22–35. On February 26, 1993 the ALJ issued a decision denying plaintiff benefits. R 13–19. On June 28, 1993 the Appeals Council denied plaintiff's request for review of the ALJ's decision. R 2–4. Proceeding *pro se* and *in forma pauperis*, plaintiff timely commenced this action, claiming in a form complaint that she is entitled to receive disability benefits and describing herself as having "severe back pains" that prevent her from doing anything. Plaintiff thereafter obtained counsel.[4]

### Hearing Testimony and Other Background

Born in Puerto Rico on May 21, 1944, plaintiff was 48 years old at the time of the hearing. She has a tenth-grade education and can speak "a little English." R 25. Except for brief instruction as a home attendant, she has no vocational training. She worked for brief periods as a home attendant, a parts assembler in a watch factory, a meat wrapper for a supermarket and a food wrapper for a caterer. R 26–27, 61, 133. On November 10, 1989, working as a food wrapper, she slipped while placing food onto a food tray, injuring her middle and lower back. R 133. She testified that she is un-

---

3. "R" followed by numerals refers to page numbers of the certified administrative record filed herein by the Commissioner.

4. Although she also described herself in her complaint as "very depressed with her situation" and under psychiatric treatment, her argument for entitlement to disability benefits in her motion for judgment on the pleadings is based solely on her back condition and we do not understand the statement in the complaint as intended to set forth a mental condition for which she might be entitled to benefits. Indeed, there is no evidence in the record that would be relevant to establishing a claim on that basis.

able to work because of her back condition and because she must spend 3 to 4 hours twice a week travelling to North General Hospital to undergo physical therapy. R 27–28. Plaintiff testified that in addition to the physical therapy, she is treated by a chiropractor twice a month. R 34. She further testified and stated in written applications that she has constant sharp back pain which radiates to her right leg and causes cramps, R 28, 33, 53, 67, 69, and that she is able to sit and stand continuously for a maximum of 30 minutes each, walk up to 2½ blocks and lift from five to ten pounds. R 28, 29. Widowed with three adult children, she lives alone in a Bronx apartment where she cooks for herself. She is able to use the buses and subways. R 29, 32. Her children, who live nearby, take her to their homes to visit them and her four grandchildren. R 29–31. Her daughter visits plaintiff twice a week to do her housecleaning. R 31.

*Medical Evidence in the Record*

The record contains documents from the following treating sources: (1) Bronx Municipal Hospital Center (from February 23, 1990 through April 24, 1992); (2) North General Hospital (from February 13, 1992 through May 20, 1992); and (3) two chiropractors, Dr. Charles Solano (from February 6, 1991 through March 14, 1991) and Dr. Serafin Izquierdo (from April 12, 1991 through February 28, 1992).

According to the Bronx Municipal Hospital Center records, at a screening examination on February 23, 1990, plaintiff complained that since her accident she suffered from lower back pain. The record of that examination noted "minimal straightening of the normal lumbar lordosis . . . likely secondary to muscle spasm," a "transitional S1 vertebra," and tenderness of the L5 vertebra and at both sacroiliac joints. R 200, 220–22. X-rays and a bone scan after the examination were "negative." R 194, 198. Plaintiff was referred to the Hospital's Rehabilitation Clinic, and at an examination by a physical therapist, Dr. R. Asaro, on March 16, 1990, she complained of non-radiating pain in the sacrum and lower back and occasional numbness in the soles of her feet. She stated she was out on disability because of back pain

and could perform functional activities except for work. R 194. Dr. Asaro noted point tenderness and muscle spasms over the right lower back. Plaintiff was able to flex her back 40 degrees, with pain on the right side, and extend it to five degrees, also with pain on the right side. Lateral side bending was accomplished to 25 degrees on the right, with pain over the right sacroiliac, and to 40 degrees on the left. Reflexes were present and equal, and sensation was intact. R 194, 198–200. On March 19, 1990, Dr. Asaro prescribed physical therapy consisting of "moist heat," a "TENS" unit and "H–S exercises" for plaintiff. R 212. Although plaintiff apparently began to visit a chiropractor 3½ months later, *see* R 170–71, there is nothing in the records to indicate that she did anything else during the next 19 months to follow up the March 19, 1990 prescription or otherwise to arrange physical therapy at the Bronx Municipal Hospital Center or any other facility.

With respect to her visits to chiropractors, the record contains New York State Workers' Compensation Board forms and New York State Department of Social Services forms completed by plaintiff's chiropractors. Dr. Serafin Izquierdo, whose Workers' Compensation reports pertained to examinations from April 12, 1991 through February 28, 1992, had reported that plaintiff was totally disabled. R 158–170. The New York State Workers' Compensation Board classified plaintiff as having a permanent partial disability on April 24, 1992. *See* R 129. In his reports, R 158–170, and in a letter to plaintiff's counsel of March 27, 1992, R 133–34, Dr. Izquierdo stated that he had observed marked scoliosis, flattening of the lumbar curve due to spasm, diminished reflexes, sensory changes, hyperesthesia, paraesthesia and thermesthesia. His diagnosis was "dorsal radiculitis, acute lumbosacral strain, with a possible discogenic disease (herniated disc)." R 134. X-rays were not performed. Dr. Izquierdo described his treatment of plaintiff as "spinal manipulation . . . to reduce nerve irritation and to restore normal biomechanical function to the spine." R 134. *See also* R 158–170 (describing treatment as "spinal manipulation . . . modalities"). He stated in his letter to plaintiff's counsel that

she "had made little improvement obtaining relief of symptoms" and that "[s]he is subject to episodes of remission and exacerbations caused by various aggravations." R 134.

Following plaintiff's application for SSI benefits on September 5, 1991, a consultative examination was performed by Dr. Mario Mancheno on November 25, 1991. In his report Dr. Mancheno noted that plaintiff complained that she had difficulty bending down and could not lift, push or pull heavy objects and that she said that she was taking no medications. R 103. He found that plaintiff walked normally and had no difficulty getting onto the examination table or lying down. She had full range of motion with normal grip in both hands and no impairment in fine manipulation. Both hips had full range of motion with negative straight leg raising bilaterally. Knee and ankle joints and jerks were normal, and there were no signs of asymmetry, muscle wasting or atrophy in plaintiff's lower extremities. R 103. Dr. Mancheno found some tenderness in the lumbosacral region, from L2 to S1, and "minimal paraspinal spasms noted bilaterally, but no gross deformity." R 104. Plaintiff could flex to 90 degrees in the sitting and standing positions and could extend each side to 30 degrees. Lateral bending was 20 degrees on each side, and rotation was 30 degrees for each. There were no sensory, motor or reflex abnormalities. R 104. His diagnosis was "status post injury of the lumbosacral spine." R 104. In his residual functional capacity evaluation, Dr. Mancheno determined that plaintiff could frequently lift or carry up to 25 pounds, stand or sit about six hours during an eight-hour workday, and had an unlimited capacity to push or pull. R 106.

Although, following her examination there by Dr. Asaro on March 19, 1990, plaintiff continued to visit the Bronx Municipal Hospital Center for unrelated gynecological and dermatological matters, see R 185–95,[5] she was not again examined there regarding her lower back until over 19 months later (two months after she applied for SSI benefits), on November 7, 1991 and on November 20, 1991. The Rehabilitation Medicine physician who examined her noted that she could forward flex her spine to 90 degrees and extend it to 10 degrees and that there was paraspinal tenderness at L4 and L5 on palpation. Her motor strength was full in all muscle groups, except for her left iliopsoas and quadriceps, which were graded 4+ out of 5. Straight leg raising was positive on the left at 45 degrees and negative on the right. Nerve conduction studies and an electromyogram were negative for lumbosacral radiculopathy and polyneuropathy. R 180–81, 184; see R 178. The physician recommended that she take nonsteroidal anti-inflammatory medication, do extension exercises and be fitted for a lumbosacral corset at an orthotic clinic. R 181. Plaintiff was referred to the Jacobi Hospital orthotic clinic and examined on December 12, 1991 by Drs. Holding, Murthy and Casino. According to Dr. Holding's report, plaintiff complained of pain in her back, leg and knee and said it was worse upon sitting and better upon standing. Dr. Holding noted that "she flexes aprox 30 degrees and extension is aprox 5 degrees" and that she had normal reflexes in her lower extremities, full motor strength and intact sensation. Dr. Holding concluded: "As this assessment implies at this point in time a [lumbosacral] corset is not indicated. The patient will be given a referral for physical therapy to teach her home exercises for abdominal strengthening and ... will be advised to buy a girdle with support to see if this helps her back during stressful activities when she is doing heavy lifting or walking." R 178. Dr. Holding also noted that plaintiff "will follow up in clinic 2 mos after physical therapy is initiated." Id. Plaintiff, however, did not return to the clinic. Two months later on February 13, 1992, plaintiff visited the orthopedic clinic at North General Hospital, where she was examined by Dr. Emmanuel.[6] Plaintiff complained about lower back pain and indicated that she had occasional weakness and numbness over the right lower extremity. She was able to toe and heel walk and she stated

---

5. At her gynecological examination on February 8, 1991, the physician noted that plaintiff "walks 10–15 blocks/day, and was advised to walk 20 blocks to [increase] wt bearing exercise." R 190.

6. Plaintiff's SSI application had been denied on January 9, 1992.

that she was being seen by a chiropractor. There was tenderness in the lumbosacral area. Dr. Emmanuel prescribed Feldene, a nonsteroidal anti-inflammatory drug used for pain in the joints. R 150. X-rays of the lumbosacral spine taken on February 26, 1992 showed "minimal osteoarthritic changes of the vertebral bodies of L3 to L4," and that "intervertebral disc spaces" were "well preserved," "posterior elements" were "intact," and sacroiliac joints were "normal." R 152. At a follow-up examination March 5, 1992, Dr. Emmanuel again noted that the lumbar area was "tender on palpation." R 147. Because it gave her indigestion, he discontinued the prescription for Feldene and prescribed Tylenol. Then or sometime after the examination—the form is undated—Dr. Emmanuel referred plaintiff to the hospital's Department of Rehabilitation Medicine for "evaluat[ion] for heat ultrasound strengthening exercise of [abdominal] and back muscles." R 144. Some time after her March 5, 1992 examination, plaintiff apparently began to receive physical therapy, although there is no reference to her having done so until the notes by Dr. S.A. Hill of the North General rehabilitation clinic of his examination of plaintiff on May 20, 1992. Plaintiff was prescribed another nonsteroidal anti-inflammatory drug, Tricosal (trilisate), for her back pain on April 16, 1992 and Cyotec for her indigestion on May 18, 1992. R 138, 139, 173.[7] Plaintiff also returned to the Bronx Municipal Hospital clinic on April 24, 1992 for a general examination at which her motor strength was graded 5 out of 5, and her reflexes were determined to be normal.

According to the notes of her general examination at North General on May 18, 1992, plaintiff was then "asymptomatic." R 139. Plaintiff was referred to Dr. Hill for fitting for an orthotic brace. R 138. At his examination of her on May 20, 1992, Dr. Hill noted that plaintiff "has received partial disability compensation [from the New York Workers' Compensation Board] [and is] now requesting SSI disability. Patient states she has significant relief when she gets p[hysical] t[herapy]. In addition the n[erve] root injec-

tions have [decreased] her l[ower] b[ack] p[ain]. She, then, attempts to do her house chores & pain reappears." R 138. Dr. Hill noted that her gait was not antalgic and she was able to heel and toe walk normally. She could flex forward to the middle of the tibia and extend back 20 degrees. Her hips could flex 130 degrees, and her knee and ankle flexions were full. Straight leg raising was positive on the right at 65 degrees with pain in the right lower back. On the left, plaintiff was able to raise her leg to 70 degrees without pain. Febere tests on the right and left were negative. Deep tendon reflexes were graded 2 throughout. Dr. Hill's diagnosis was L5–S1 radiculopathy. He scheduled a fitting for an orthotic brace on May 26, 1992, and prescribed that plaintiff continue her physical therapy and continue to take Tricosal along with Maalox and Cyotec. R 138. At plaintiff's May 26, 1992 fitting for an orthotic brace, Dr. Hill noted that plaintiff was using physical therapy and Tricosal "to help [decrease] l[ower] b[ack] p[ain]" and that she stated "n[erve] root injection helped [decrease] l[ower] b[ack] p[ain] very much." R 137.

At the first examination on May 20, 1992, Dr. Hill also completed a residual functional capacity evaluation. R 131–32. According to Dr. Hill's assessment, plaintiff could sit and stand three hours each and walk two hours during an eight-hour workday. She could frequently lift up to five pounds, occasionally lift up to ten pounds, and occasionally carry up to five pounds. She could not bend, but could occasionally climb steps and reach. She could push and pull with her hands, but not with her legs. According to Dr. Hill, the medications he prescribed caused no side effects. R 131–32.

*The ALJ's Decision*

The ALJ's decision was made at step five of the requisite five-step analysis. At steps two and three, he found that plaintiff had two "severe impairments"—lumbosacral spine sprain-strain and sacroiliac joint pain tenderness—but that the evidence did not show

---

7. Plaintiff notes in her list of medications that it was Dr. S.A. Hill who prescribed Tricosal on April 16, 1992. R 173. There are no notes or records of an examination of plaintiff by Dr. Hill until May 20, 1992.

that, either singly or in combination, they were listed in Appendix 1 or medically equivalent to a listed impairment. At step four, the ALJ found that plaintiff did not have the residual functional capacity to perform her past work as a home attendant, food wrapper or assembler. The ALJ further found, however, that plaintiff's allegations of disabling health problems were not supported to the degree alleged and were inconsistent with the medical record and with the treatment she had been prescribed. His step five finding was that plaintiff had the residual functional capacity to perform "a full range of light work." Under Rule 202.16 of the medical-vocational profiles set forth in the Commissioner's residual functional capacity tables at 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 2, plaintiff therefore was "not disabled," because, notwithstanding her inability to communicate in English and her unskilled background, she was a "younger individual" (*i.e.,* under 50), *see id.* § 201.00(h), 202.00(g), with the capacity to perform "light work." The regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors

such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).[8]

*Discussion*

■ Plaintiff contends that her motion should be granted because the ALJ failed to accord proper weight to the opinions of her treating physicians, Dr. Izquierdo and Dr. Hill. Plaintiff, conceding that she turned to the physicians at North General Hospital only after "extensive treatment" by her chiropractor, Dr. Izquierdo, "had failed to result in any improvement of her lower back pain," Plaintiff's Reply Memorandum of Law at 6, in effect, acknowledges the problem with her SSI application: for over two years after her accident the *only* treatment she sought or received for her lower back pain was "spinal manipulations" from chiropractors, despite being prescribed physical therapy as early as her first examination in March 1990. Shortly after the motions in this case became fully submitted, the Second Circuit upheld Social Security regulations under which, for purposes of construing the "controlling weight" rule applicable to the "medical opinions" of treating sources, *see* 20 C.F.R. §§ 404.1527(d), 416.927(d), a chiropractor is not an "acceptable medical source," and "chiropractors cannot provide *medical* opinions." *Diaz v. Shalala,* 59 F.3d at 313 (emphasis in original); *see also id.* at 314 n. 8. The Second Circuit explained that 20 C.F.R. §§ 404.1527(d), 416.927(d) is entitled "*How we weigh medical opinions,*" and that "a treating source's opinion thus must be a *medical* opinion under this provision's 'controlling weight' rule." *Id.* (emphasis in original).

According to the regulations, however, a chiropractor's opinion is *not* a medical

---

8. The regulations define "sedentary work" as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

Had plaintiff been found able to perform only "sedentary work," she would then have been found disabled under the medical-vocational profiles in the Commissioner's residual functional capacity tables, given her age, inability to communicate in English and unskilled background. *See* 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 2, Rule 201.17. An individual who is 50 years old or older and able to perform only "light work" will also be found disabled if she is unable to communicate in English and has an unskilled background. *See id.,* Rule 202.09.

opinion. The regulations provide that "Medical opinions are statements from physicians and psychologists or other *acceptable medical sources* that reflect judgments about the nature and severity of your impairments(s). . . ." 20 C.F.R. § 404.1527(a)(2) (emphasis added). Section 404.1513(a) lists five categories of "acceptable medical sources," none of which mentions chiropractors. Instead, chiropractors are expressly listed in a different section, under "other sources" whose "[i]nformation . . . may also help us to understand how your impairment affects your ability to work." 20 C.F.R. § 404.1513(e) (1994). Because the regulations do not classify chiropractors as either physicians or "other acceptable medical sources," chiropractors cannot provide *medical* opinions.

*Diaz v. Shalala,* 59 F.3d at 313 (emphasis in original). In view of "the subordinate status that the opinions of chiropractors occupy under the regulations," *id.* at 314 n. 8, the ALJ was not required to give controlling weight to Dr. Izquierdo's opinion but instead had the discretion to determine what weight to give it "based on all the evidence before him." *Id.* at 314. Especially since Dr. Izquierdo's treatment of plaintiff did not include such conventional medical treatment as prescriptions of anti-inflammatory nonsteroidal medication and ordinary methods of physical therapy, and plaintiff herself maintains that her exclusive reliance on his "spinal manipulations" was unsuccessful, the ALJ hardly abused his discretion by not deferring to Dr. Izquierdo's opinion as expressed in his letter to plaintiff's counsel.

In rejecting the opinion of Dr. Hill concerning plaintiff's residual functional capacity, the ALJ cited evidence that is pertinent to a determination that a treating physician's opinion is not entitled to controlling weight. With respect to the fourth and fifth factors enumerated in the regulations, the supportability of the opinion (*i.e.,* the extent to which the source presents relevant evidence, particularly medical signs and laboratory findings, to support the opinion) and the consistency of the opinion with the record as a whole, *see* 20 C.F.R. §§ 404.1527(d), 416.927(d), the ALJ noted that Dr. Hill had given "no objec-

tive clinical or diagnostic musculoskeletal, neurological or other findings supporting his opinion" and that there was evidence in the record that was inconsistent with Dr. Hill's opinion. The ALJ pointed to objective evidence in the treating records that rebutted a finding of disability. For example, electromyograms showed no radiculopathy, X-rays showed only minimal osteoarthritic changes, and bone scans were negative. Insofar as they determined that a lumbosacral corset was not needed and recommended simply that plaintiff undertake physical therapy and wear a girdle while engaging in heavy lifting and walking, the doctors at the orthotic clinic at Jacobi Hospital who examined plaintiff obviously believed that she was able to perform a wide range of physical activity. As the ALJ also pointed out, once plaintiff finally began to avail herself of physical therapy, the North General Hospital records reported that her condition improved as a result of it. As for the first enumerated factor pertinent to a determination that a treating physician's opinion is not entitled to controlling weight ("the length of the treatment relationship and the frequency of examination," *see* 20 C.F.R. §§ 404.1527(d), 416.927(d)), it is especially significant that, as far as can be determined on the basis of the North General Hospital documents in the record, Dr. Hill had examined plaintiff only once prior to assessing her residual functional capacity on May 20, 1992.

Moreover, there is additional evidence in the record that supports the ALJ's determination that plaintiff's testimony concerning her pain and the degree of restrictions it placed on her physical activity was not credible. Although plaintiff testified at the hearing that she was able to walk only 2½ blocks, upon a gynecological examination on February 8, 1991 the examiner noted that plaintiff walked "10–15 blocks/day," R 190, and even Dr. Hill in his residual functional capacity evaluation noted that plaintiff could walk two hours over the course of an eight-hour workday. Plaintiff's account of the time she could stand or sit was also considerably more limited than that reported by Dr. Hill, *see* R 28, and her account at the hearing of the limitations on her activity was also inconsistent

with her statement in her SSI application regarding "household maintenance (including cooking, cleaning, shopping, and odd jobs around the house as well as other similar activities)" that she had "no problems doing these chores." R 56. On the basis of such discrepancies as well as the objective evidence cited above and the progress that was reported once she finally began physical therapy and taking her prescribed pain medication, it was reasonable for the ALJ to reject plaintiff's statements regarding the degree of limitations caused by her back pain. Apart from Dr. Hill's residual functional assessment, all the other medical evidence in the record is consistent with the ALJ's conclusion. Accordingly, there was substantial evidence for the ALJ's determination that plaintiff had the residual functional capacity to perform "light work" and his corollary decisions not to follow the opinion of Dr. Hill, and not to accept plaintiff's account of the limitations caused by her lower back pain. *Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. at 1427; *Diaz v. Shalala,* 59 F.3d at 314.

Indeed, even if the ALJ had accepted plaintiff's account at the hearing of her physical limitations, the evidence before him did not show that her "physical impairment" was one that "ha[d] lasted or [could have been] expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). It is significant that, apart from visiting a chiropractor, for over 19 months after her March 1990 examination at the Bronx Municipal Hospital Center plaintiff did nothing to follow up the prescription of physical therapy. She was told that physical therapy would alleviate her pain, but her failure to avail herself of it could lead to the inference that her pain was not as great as alleged. She did not begin physical therapy or even take prescription pain medication such as Feldene or Tricosal until after her February 13, 1992 examination at North General Hospital. Although she claims to have been disabled since November 10, 1989, plaintiff did not begin to receive remedial treatment from an "acceptable medical source," as far as the Social Security law is concerned, until over 27 months after her accident, not until her SSI

application had been rejected, and only three or four months before the ALJ's hearing. Given the brief period of such treatment she had received by the time of the hearing, there was no reason for the ALJ to have assumed that plaintiff's condition could not have been significantly improved on the basis of twelve months of physical therapy, pain medication and other treatment prescribed by an "acceptable medical source." "[A] remediable impairment is not disabling." *Dumas v. Schweiker,* 712 F.2d 1545, 1553 (2d Cir.1983). *See also* 20 C.F.R. §§ 404.1530, 416.930; *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983); *McFarland v. Sullivan,* No. 87 Civ. 8794 (SWK), 1990 WL 157305 at *6 (S.D.N.Y. June 19, 1990) (claimant who ignored diet and did not take medication failed to avail herself of prescribed treatments and therefore was not disabled for SSI purposes). Yet the record contains no basis on which plaintiff, having left her condition untreated by "acceptable medical sources" until the eve of the hearing, could have plausibly maintained that her impairment was such that it could not have been substantially diminished with reasonable treatment and effort.

■ There is one contradiction between the ALJ's determination at step four that plaintiff was "unable to perform her past relevant work as a home attendant, food wrapper and assembler" and his determination at step five that plaintiff had the residual functional capacity to perform "a full range of light work." R 19. As an assembler, plaintiff spent three to four months "on an assembly line putting watches together." R 62. As she points out, *see* Plaintiff's Memorandum of Law at 4, the physical exertional requirements of the generic occupation of "parts assembler" are described in the Department of Labor's Dictionary of Occupational Titles as "light work." United States Department of Labor, *Dictionary of Occupational Titles* (vol. II, 4th ed. rev. 1991), at 713, ¶ 715.381–094. The physical exertional requirements of the generic occupations that correspond most closely to plaintiff's other previous jobs—those of "home attendant," "food wrapper" and "meat packer"—are described as "medium work." *Id.* at 257, 932–

33, ¶¶ 354.377–014, 920.587–018. By stating his step four finding in terms of plaintiff's own description of the work, the ALJ suggested one way out of the apparent inconsistency that arises from the Dictionary's classification of "parts assembler" as "light work":

The claimant's former work as a home attendant, food wrapper and assembler, *as she described it*, required walking and standing a great deal as well as frequent bending, reaching, lifting and carrying. She is no longer able to perform these activities to the extent required by such work and, therefore, cannot return to any of her prior jobs.

R 17 (emphasis added). However, although plaintiff did describe the physical requirements of her previous positions as home attendant and food wrapper in ways that might support the ALJ's statement, *see* R 26, 63, she said nothing at the hearing about the physical requirements of her job as a watch assembler, *see* R 28, and in her SSI application she said that it required lifting and carrying of weights up to only 10 pounds and only "occasional" bending. R 62.

Granting that the ALJ's finding at step four that plaintiff was not able to perform her previous work, to the extent it also embraces her previous work as a watch assembler, is inconsistent with his finding at step five that plaintiff was able to perform the "full range of light work," I do not think that the contradiction should be taken to undermine the ALJ's decision at step five. I find it likely that the ALJ jumbled together plaintiff's previous job descriptions, probably focusing on plaintiff's most recent job as a food wrapper in which she incurred her back injury and her work as a home attendant, which she listed first in her SSI application. *See* R 57–58, 61–66. Were we to remand the case to the ALJ for clarification, there is no doubt that he would refine his step four finding to exclude plaintiff's brief stint as a watch assembler rather than reverse his step five finding that plaintiff retained the residual functional capacity to perform the full range of light work. No purpose would be served by prolonging this case further, and I find that the noted inconsistency is not material

nor a ground for reversing the finding of no disability.

Finally, plaintiff argues that even if the ALJ's conclusions are correct, under the medical-vocational profiles in the Commissioner's residual functional capacity tables, because plaintiff reached the age of 50 on May 21, 1994, "a determination that she is disabled is mandated" as of that date. Plaintiff's Memorandum of Law at 14. *See* 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 2, Rule 202.09; *see supra,* note 7. Any such "mandate" would be completely beyond our authority, however. The ALJ's decision which plaintiff asks us to review was rendered on July 7, 1992 and applies to a request for disability benefits covering the period from November 10, 1989 through the date of the hearing. It is obvious that there is no basis on which to make any determination regarding plaintiff's physical condition two years after the completion of the record on which the instant determination must be based. Plaintiff is advised that the ALJ's determination on July 7, 1992 does not bar her from applying for SSI benefits as of May 21, 1994 or as of any other subsequent date.

## CONCLUSION

For the foregoing reasons I recommend that your Honor grant defendant's motion for judgment on the pleadings and deny plaintiff's.

Copies of this Report and Recommendation have been mailed this date to the following:

Guilene Cherenfant, Esq.
Bronx Legal Services
579 Courtlandt Avenue
Bronx, New York 10451

Sapna V. Raj, Esq.
Assistant United States Attorney
100 Church Street, 19th Floor
New York, New York 10007

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of Court and send copies to the Honorable Harold Baer, Jr., to the opposing party and to the undersigned. Fail-

ure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Baer. *See* 28 U.S.C. § 636(b)(1); Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure; *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir. 1983) (per curiam).

Dated: New York, New York
    April 26, 1996