**Gary BEAUVOIR, Plaintiff–Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security Administration, Defendant–Appellee.**

**No. 342, Docket 96–6082.**

United States Court of Appeals, Second Circuit.

Argued Oct. 24, 1996.

Decided Jan. 21, 1997.

Stanley F. Meltzer, Meltzer, Fishman, Madigan & Campbell, New York City, for Plaintiff–Appellant.

Gwen Pollak, Assistant United States Attorney, Eastern District of New York, Brooklyn, NY (Zachary W. Carter, United States Attorney, Varuni Nelson, Bruce H. Nims, Assistant United States Attorneys, of counsel), for Defendant–Appellee.

Before: OAKES, VAN GRAAFEILAND, and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Gary Beauvoir appeals from Judge Raggi's decision upholding the Social Security Administration's denial of disability insurance benefits to Beauvoir beyond September 30, 1990. Beauvoir asserts that he continues to suffer from an inability to speak that constitutes a listed impairment under 20 C.F.R. § 404, Subpart P, App. 1, Listing 2.09 ("Listing 2.09"). We hold that Beauvoir's ability to speak in a sustained whisper is not within Listing 2.09's description of an "[o]rganic loss of speech."

Beauvoir applied for disability benefits under the Social Security Act, 42 U.S.C. § 423, on March 31, 1991, claiming that he had been unable to work since a car accident on October 26, 1986, due to fractures of his ankle and hip and damage to his trachea that caused a significant impairment of his ability to speak. After a hearing on June 14, 1993, at which Beauvoir appeared with his attorney and testified in a soft whisper, Administrative Law Judge Harold Rosenbaum ("ALJ") determined that the relevant period of disability was from the date of the accident to September 30, 1990. In rendering his decision, the ALJ relied on medical reports and other evidence that surgery on Beauvoir's vocal cord in 1987 followed by speech therapy had improved his ability to speak. The ALJ also relied on his own assessment of Beauvoir's ability to speak as demonstrated during the hearing. With regard to Beauvoir's other injuries, the ALJ relied on reports and testimony by Beauvoir that the injuries to his hip and ankle had healed by March 1990. The ALJ concluded that by the end of September 1990, Beauvoir was physically able to return to his prior work as a liquor store manager—although by this time appellant had become a full-time accounting student—and that Beauvoir was therefore not entitled to further disability payments.

Appellant's request for review by the Social Security Administration's Appeals Council was rejected in June 1994. Beauvoir then filed the instant action seeking review of the Social Security Administration's decision under 42 U.S.C. § 405(g). After examining the record and listening to a recording of the hearing before the ALJ, Magistrate Judge Mann recommended that the ALJ's decision be affirmed. *Beauvoir v. Shalala,* 94–CV–3757 (RR) (E.D.N.Y. Sept. 1, 1995). District Court Judge Raggi, after considering the record and also listening to the recording of the hearing, adopted Magistrate Mann's report and recommendation.

The Social Security Act defines "disability" in relevant part as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Administrative regulations prescribe the analytic framework for evaluating claims of disability. The Social Security Administration ("SSA") first considers whether the claimant is currently engaged in substantial gainful employment. If not, the SSA next considers whether the claimant has a "severe impairment" that significantly limits the ability to do basic work activities. If the claimant does suffer such an impairment, then the SSA determines whether the claimant has an impairment listed in Appendix 1 of the regulations, 20 C.F.R. § 404, Subpart P (such as Listing 2.09). If the claimant meets the descriptions of one of the listed impairments, then the SSA presumes the claimant to be disabled without considering the claimant's actual ability to perform substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); *see also Berry v. Schweiker,* 675 F.2d 464, 467 (1982). The sole question before us is whether Beauvoir's

limited ability to speak is a "listed" impairment.

Our review of the Social Security Administration's "final decision denying a SSI disability benefits claim is not *de novo;* it is limited to inquiring into whether the Secretary's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." [1] *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990) (citation omitted). The question here is somewhat unusual in that the ALJ based his decision in part on his personal observation and hearing of Beauvoir's testimony, and the magistrate and district judges listened to the tape of that hearing. We also have the tape before us.

The issue in the instant matter concerns Listing 2.09. Listing 2.09 states the qualifying disability condition as:

> *Organic loss of speech* due to any cause with inability to produce by any means speech which can be heard, understood, and sustained.

20 C.F.R. § 404, Subpart P, App. 1, Listing 2.09. Social Security Ruling 82–57 ("Ruling 82–57") further defines the disability condition of Listing 2.09:

> Three attributes of speech pertinent to the evaluation of speech proficiency [under Listing 2.09] are: (1) audibility—the ability to speak at a level sufficient to be heard; (2) intelligibility—the ability to articulate and to link the phonetic units of speech with sufficient accuracy to be understood; and (3) functional efficiency—the ability to produce and sustain a serviceably fast rate of speech output over a useful period of time. When at least *one* of these attributes is missing, overall speech function is not considered effective.

Medical reports, the ALJ, Judge Mann, Judge Raggi, and even on occasion Beauvoir's own counsel have characterized appel-

---

**1.** Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases was transferred to the Commissioner of the Social Security Administration. Accordingly, Shirley S. Chater, Commissioner of Social Security, was substituted as the defendant in the instant case. However, the Secretary of Health and Human Services is referred to in the relevant caselaw, as well as in the Report and Recommendation filed by Magistrate Judge Mann in the instant case. At the time of the ALJ's decision in the instant case and the denial of review by the Appeals Council, the Social Security Administration was under the control of the Secretary of Health and Human Services.

lant as being able to speak in an understandable whisper. Dr. J.B. Jasmin, a medical consultant who evaluated Beauvoir in 1992 on behalf of the SSA, stated in his report: "Speaks in a whisper, but can be heard and understood." The ALJ who conducted an hour-long hearing consisting of appellant's testimony, observed in his opinion that Beauvoir was able to communicate by speaking "very low, as in a whisper." The ALJ commented to Beauvoir's counsel, "You and I have learned at this hearing he can be understood, right?" Beauvoir's counsel responded, "Yes."

Magistrate Judge Mann listened to a tape recording of the hearing and reached the same conclusion as the ALJ. She was "able to understand nearly all of plaintiff's [Beauvoir's] testimony, including the portions designated as inaudible on the transcript." *Beauvoir*, 94–CV–3757, at 11. Judge Raggi, adopting Judge Mann's report "in all respects," wrote: "The Court has also listened to the tape recording of the ALJ hearing in this case.... [Beauvoir] is able to make himself heard and understood over a sustained period. The tape recording demonstrates this."

Although appellant asserts on appeal that his speech at the ALJ hearing constituted "scant intermittent monosyllabic grunts," Appellant's Br. at 18, another section of his brief concedes that his condition allows him to speak in a "stage whisper." *Id.* at 21. Moreover, as noted above, Beauvoir's attorney acknowledged during the ALJ hearing that his client was able to be understood by the judge during that hearing.

Finally, we agree that the recording of the hearing before the ALJ supports the conclusion of the three other judges, namely, that while Beauvoir's speaking ability is impaired, he is able to speak in a soft, yet sustainable and understandable whisper. We therefore conclude that their factual findings are not clearly erroneous.

We now turn to whether the ALJ's decision was based on an "erroneous legal standard," *Cruz*, 912 F.2d at 11, that is, whether appellant's inability to converse in more than a stage whisper meets the requirements of Listing 2.09 and Ruling 82–57 regarding au-

dibility, intelligibility, and functional efficiency.

Appellant relies on *Gresh v. Shalala*, No. 93–129J, 1994 WL 465828 (W.D.Pa. June 16, 1994) (memorandum order), in which the court reversed an ALJ's denial of benefits under Listing 2.09 where the record "clearly documents that plaintiff's speech is nothing more than a whisper." *Id.* at *3, 1994 WL 465828. However, in *Gresh* the claimant had problems both in sustaining speech and in making herself understood. She would speak an occasional word in a normal tone and then become inaudible afterwards. Her ability to speak was thus "variable." *Id.* at *2, 1994 WL 465828. Most significantly, Gresh was unable "to testify in a manner which was capable of being recorded." *Id.* at *3, 1994 WL 465828. At Gresh's administrative hearing, Gresh's sister attempted to relay answers to the ALJ, but at one point there was a break in the testimony due to a communication problem. *Id.*

In the instant case, there was medical evidence that Beauvoir was able to communicate orally, albeit in a whisper. He was able "to speak at a level sufficient to be heard," Ruling 82–57, by the ALJ, and his speech at the hearing was successfully recorded. He was, therefore, heard and understood, fulfilling the audibility and intelligibility prongs of Ruling 82–57. Moreover, Beauvoir maintained his stage whisper throughout the hour-long ALJ hearing. He was thus able to sustain speech. This ability satisfies the functional efficiency prong, "the ability to produce and sustain a serviceably fast rate of speech output over a useful period of time." Ruling 82–57.

We therefore affirm.