Carmen **ECHEVARRIA**, Plaintiff,

v.

Kenneth S. **APFEL**[1], **Commissioner of Social Security, Defendant.**

No. 96CIV.8276(WHP).

United States District Court,
S.D. New York.

May 11, 1999.

*fano v. Schwartz,* 95 A.D.2d 852, 464 N.Y.S.2d 211 (2d Dept.1983).

1. Pursuant to Fed.R.Civ.P. 25(d)(1) Kenneth S. Apfel, the current Commissioner of Social Security, has been substituted for former Commissioner Shirley S. Chater, who was originally named by plaintiff as defendant in this case.

Carmen Echevarria, Bronx, NY, pro se.

Susan D. Baird, Assistant United States Attorney, Southern District of New York, New York, NY, for U.S.

### ORDER

PAULEY, District Judge.

This is an action brought under the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), to review a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability benefits. Defendant moved for judgment on the pleadings pursuant for FED. R. CIV. P. 12 (c) affirming the Commissioner's decision. Thereafter, this motion was referred to the Honorable Sharon E. Grubin, United States Magistrate Judge, for preparation of a report and recommendation. On March 18, 1999, Judge Grubin issued a Report and Recommendation (the "Report"), recommending that defendant's motion for judgment on the pleadings be denied and that the case be remanded to the Commissioner for further proceedings. No objections to the Report have been filed.

The Court, having reviewed the Report for clear error, determines that it is legally correct and proper. See *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (holding that even where a district judge must make a de novo determination, "[Section 636(b)(1)] permit[s] whatever reliance a district judge, in the exercise of sound judicial discretion, [chooses] to place on a magistrate's proposed findings and recommendations."). The Court therefore adopts the Report in its entirety.

Accordingly, for the reasons stated in the Report, the Court directs that the case be remanded to the Commissioner for further proceedings.

### REPORT AND RECOMMENDATION TO THE HONORABLE WILLIAM H. PAULEY

GRUBIN, United States Magistrate Judge.

Plaintiff *pro se* brings this action under the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), for review of a final decision of the Commissioner of Social Security (the "Commissioner") denying plaintiff's application for Disability Insurance and Supplemental Security Income benefits based on disability. Defendant has moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings affirming the Commissioner's decision. Plaintiff has not responded to the motion. For the

reasons set forth below, I recommend that defendant's motion be denied and the case be remanded to the Commissioner for further proceedings.

## BACKGROUND

Plaintiff applied for benefits on May 26, 1994, stating she had become disabled on February 10, 1994 from an intestinal obstruction. R. at 58–61, 67–71, 101–08.[2] The application was denied on July 16, 1994. *Id.* at 63–66. Plaintiff filed for reconsideration on August 22, 1994, elaborating on her condition and adding that she then also suffered from problems with her back, high blood pressure and depression. *Id.* at 77, 109–20. Reconsideration was denied on October 7, 1994. *Id.* at 87–90. At plaintiff's request, a hearing was held on May 31, 1995 before Administrative Law Judge John D. Thompson, Jr. (the "ALJ"). *Id.* at 20–57. The ALJ issued his decision on March 12, 1996, denying plaintiff benefits on the ground that she was able to perform her past work. *Id.* at 7–17. On April 24, 1996 plaintiff requested review by the Appeals Council. *Id.* at 5–6. On September 17, 1996 the Appeals Council found the ALJ's decision to be supported by substantial evidence and in accordance with the law. *Id.* at 2–3. Plaintiff timely commenced this action.

### The Hearing

Plaintiff, represented by counsel and speaking through a Spanish interpreter, was the only witness at the hearing. Forty-nine years old at the time of the hearing, she had completed seventh grade in her native Puerto Rico. She could understand, speak and write some English. She lived alone, doing household chores herself except sweeping because she could not bend. Sometimes her back pain would be so severe she could not do chores and she would have to lie down. She thought that five pounds seemed a lot for her to lift; carrying a light grocery bag made her

tired. Her children and her brother visited her every day. She went to church daily with her son, and sometimes they would go walking and window-shopping. At home she spent time watching television, reading and "inventing things." When asked about the last, she gave, as an example, making dolls out of paper. *Id.* at 28–29, 45–47, 50–51.

On February 10, 1994 plaintiff had gone to Jacobi Medical Center ("Jacobi") complaining of abdominal pain. After a brief stay at the hospital, she went to Puerto Rico, where she had an operation to remove a bowel obstruction on February 18 at Ponce District Hospital. She returned to New York and resumed treatment in May at Jacobi. She said her regular physician was Dr. Rocker, but apparently since November she had been seeing Dr. Lai. She said they had prescribed medication for her high blood pressure and thyroid condition and also treated her for abdominal and back pain. Dr. Lai had referred her once to a Dr. Todino at the same clinic for an examination. Plaintiff reported that an obstetrician-gynecologist (who was perhaps Dr. Todino) told her she would always have back pain as a result of her operation. She also saw Dr. Geraldo several times at the Governor Juan Ponce De Leon Health Center for an allergy problem and began seeing Dr. Soto, a psychiatrist at Urban Health Plan, Inc., five months before the hearing on a monthly or bimonthly basis for her depression. *Id.* at 32–44, 48.

Plaintiff explained that her husband had passed away on February 11, 1994, and her abdominal and back pain had begun the day before. The pain had grown worse and become constant since her operation and interfered with her sleep. She took *Motrin* and *Tylenol*, which helped somewhat and let her sleep. She thought she could return to work were it not for

---

2. "R." followed by page numbers refers to the pages of the certified administrative record filed herein by the Commissioner.

the abdominal and back pain. Her depression had begun more than three years earlier, but had become worse since her husband's death. It manifested itself in frequent crying. *Id.* at 32, 36, 39, 41–44, 47–49.

Plaintiff testified she had worked as a home care attendant from 1989 to February 10, 1994. Her duties had included preparing meals for patients, helping them out of bed into a wheelchair, taking them to the bathroom and for walks, cleaning their homes, doing errands and accompanying them to hospitals. *Id.* at 29–31, 52. The ALJ's inquiry into the exertional requirements of her job included the following:

Q Can you describe this work which you apparently performed from 1989 to 1994 as being a job that required you to walk and stand for three hours a day, sit for an hour, and frequently bend and to occasionally reach and to lift weights up to one hundred pounds. Is this an accurate description of the job?

A A hundred pounds is a lot, I don't think—

Q Well, I don't know. Did you fill out this form [Disability Report of May 26, 1994]?

ATTY: Your Honor, that form is filled out in English. Our client does not read or write English.

BY ADMINISTRATIVE LAW JUDGE:

Q Well, I mean I have to ask, Miss Douglas. Was this filled out based on information that you gave?

Plaintiff: I would never be able to lift one hundred pounds.

\* \* \* \* \* \*

Q So am I to assume that you would be standing or walking off and on for at least six hours during the normal eight-hour day?

A Yes, I was always doing the chores.

Q Now, during the course of your normal eight-hour workday when you were doing the various duties that you performed at this job as a home attendant, what would have been the heaviest amount of weight that you normally had to lift and carry in order to be able to perform your job on a day-to-day basis?

A When I had to carry the groceries. They didn't permit us to grab or lift anything heavy in the apartment.

Q What was the heaviest amount of weight that you lifted and carried? Was it less than twenty pounds?

A Less than twenty pounds.

*Id.* at 30–32. At the end of the hearing plaintiff's counsel questioned her:

Q Is there anything that you do that makes your back pain worse?

A Well, when I try to bend to pick something up the pain feels stronger.

Q Since when I[sic] have you had the back pain?

A Ever since I had the surgery I felt pain and pain.

\* \* \* \* \* \*

Q At this time, do you think that you can go back and do your former job?

A Well, I don't think I could do the same thing.

Q Why not?

A Because it is very difficult to know the case that they will give you; they are always different, and I would not be able to lift anybody anymore.

A Did you used to lift and carry patients?

A I had to lift them from the bed and put them on wheelchairs.

Q And how much did they weigh?

A Sometimes around a hundred fifteen pounds but now I don't have the strength.

*Id.* at 50, 52. At the end of counsel's questioning, the following exchange took place:

ALJ: Well, I remind you Miss Douglas that the last testimony is at the [sic] variance with her prior testimony. She testified under direct examination that

her job didn't require her to lift more than twenty pounds.

ATTY: I think she meant on a regular basis, Your Honor.

ALJ: Well, that was my question Miss Douglas. And I asked her about the form and I believe her comment was "That seems like an awful lot of weight." I asked her in Exhibit 14, if you recall, whether that was an accurate description of her job and she said apparently it wasn't and I asked her what would have been the maximum that she had to lift and carry. I just point it out for your reference. Do you have a closing statement?

Counsel: Your Honor, I don't believe there's a [INAUDIBLE]. You didn't ask her about all the things that I was inquiring about, and it is common knowledge that home attendants do have to lift and carry the patients from time to time.

ALJ: Well, do you have a closing statement?

*Id.* at 52–53. The ALJ did not ask plaintiff to clarify her testimony.

*The Documentary Evidence*

The record before the ALJ included the Disability Report of May 26, 1994 and two Reconsideration Disability Reports, one dated August 23, 1994 and the other dated September 8, 1994, all filled out by plaintiff. *Id.* at 101–24. Plaintiff's Disability Report stated her claim: "I am unable to do any kind of work due to major surgery. I am unable to perform my usual occupation as a home health aide. I am unable to do any lifting." She described her job as "Assist patients in their home. Clean, dress, cook, wash, bathe, etc." It required walking for three hours a day, standing for three hours and sitting for one, with frequent bending and occasional reaching. She checked "100 lbs." when asked the "heaviest weight lifted" in that job, and "50 pounds" as "frequently lifted/carried." In responding to the question, "Has your doctor told you to cut back or limit your

activities in any way," she wrote: "The physicians at Jacobi and Ponce PR told me that I must not return to a job which requires physical, manual labor." Plaintiff's first Reconsideration Disability Report gave a similar description of her limitations: "...I can't lift anything heavy, not too much walking, problems with back, not much standing." She identified depression as an additional illness.

Plaintiff's second Reconsideration Disability Report was more detailed. She described her limitations as follows:

> Operated of small bowel obstruction 2/94. It causes me constipation and back pains. I have arthritis all over my body. I am unable to get out bed sometimes due to the pain in my body. I also have thyroid problems, constant headaches, dizziness, weight loss. High blood pressure and depression.

As to restrictions placed on her by physicians, she stated, "On Feb. 94 my doctor told me not lift heavy material for a long time." With respect to personal care and housework, plaintiff stated she handled her personal care needs when she felt well and her daughter did the household chores when plaintiff felt sick.

The record contained Residual Functional Capacity ("RFC") Questionnaires completed by three of plaintiff's physicians. The first, dated November 30, 1994, was from Dr. Geraldo. *Id.* at 156–60. Dr. Geraldo reported he had been seeing plaintiff for one month. His diagnosis was hypertension, hypothyroidism and upper respiratory infection. He said the prognosis was good and plaintiff's impairment was not expected to last twelve months. He said he could not comment on how much plaintiff could lift or carry and that she could walk, stand or sit in an eight-hour work day "as tolerated."

The second was an undated psychiatric assessment from Dr. Soto. *Id.* at 161–64. Dr. Soto diagnosed plaintiff as suffering from a major recurrent depression, including crying spells, with losses of appetite

and sleep. He stated that her depression exacerbated her pain. He described the effect of her psychiatric impairments on her daily activities, including her ability to function in the workplace, as not marked or severe.

The third RFC form, dated May 22, 1995, came from both Dr. Lai and Dr. Todino. *Id.* at 165–69. They reported that they had been seeing plaintiff every three months (apparently since her return from Puerto Rico after her operation there). They said that plaintiff suffered from abdominal and low back pain from post-surgical adhesions, as well as depression, allergic rhinitis and hypertension. They said these conditions could reasonably be expected to produce the pain alleged. While they reported that plaintiff's prognosis was good, they said that her impairment would last at least twelve months. They wrote that plaintiff could stand for no more than two hours in an eight-hour workday, sit for only one, and could lift and carry up to five pounds. In addition, plaintiff would have to lie down during the day to ease her low back pain.

There was also an RFC form dated September 26, 1994 from one of the Social Security Administration's (the "SSA") consultants, Dr. Levit, a nonexamining physician. *Id.* at 78–86. According to Dr. Levit plaintiff could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk for a total of six hours in an eight-hour workday and sit for a total of six hours in an eight-hour workday. Dr. Levit provided no explanation of how these conclusions were reached.

The record also contained material from Ponce District Hospital from February 18 to 26, 1994, *id.* at 126–30, from Jacobi from February 1 to June 7, 1994, *id.* at 132–45, and from Urban Health Plan, Inc., from December 14, 1994 to August 14, 1995, *id.* at 175–95. The records from Ponce District Hospital consisted of a doctor's note and a discharge summary describing plaintiff's surgery as an exploratory laparotomy and a lysis of adhesions to remove a small bowel obstruction.[3] Plaintiff was restricted to "moderate" activity, with "no lifting of heavy objects of any kind." The reports from Jacobi after the operation included a note dated May 5, 1994 reporting plaintiff's complaint of pain and warmth around the surgical area, as well as depression. Plaintiff was referred to the surgery department, which recorded on June 7, 1994 plaintiff's complaint of constant abdominal and back pain since her operation, a pain not relieved by medication although better than it had been two months earlier. While the surgical scars were well healed, she had tenderness and pain in the abdominal area. The records from Urban Health Plan, where plaintiff was being treated for her mental as well as physical complaints, were similar with respect to her physical symptoms. Thus, an examination report of January 26, 1995 recorded plaintiff's complaints of pain and depression. On April 11 she reported chest pains, headache, congestion, a sore throat and pain in the abdominal area. Two weeks later, on April 24, an examination report recorded "subjective improvement" with "occasional pain in scar of the laparotomy." Notes by the psychiatrist Dr. Soto of March 10, May 15 and August 14, 1995 stated that plaintiff was depressed but improved on each visit. Dr. Soto prescribed Sinequan and Paxil, two antidepressant drugs. *See Physician's Desk Reference* 2203, 2851 (52d ed.1998). There was also an x-ray report of January 26, 1995 finding no pathology.

*The ALJ's Decision*

The ALJ denied plaintiff benefits at step four of the five-step sequence of 20 C.F.R.

---

**3.** A laparotomy is a "surgical incision through the flank; less correctly, but more generally, abdominal section at any point to gain access to the peritoneal cavity." *Dorland's Illustrated Medical Dictionary* 900 (28th ed.1994). An adhesion is "a fibrous band or structure by which parts abnormally adhere." *Id.* at 973. Lysis is a "mobilization of an organ by division of restraining adhesions." *Id.* at 29.

§§ 404.1520, 416.920 (*see* pages 19–20, below). He found that plaintiff had "a history of hypertension, hypothyroidism, elevated cholesterol, depression and [was] status post exploratory laparotomy which cause [sic] vocationally relevant limitations." R. at 11. No impairment was equivalent to any listed in Appendix 1 of the regulations. He further found that plaintiff had the residual functional capacity to perform "light" work.[4] Concluding that plaintiff's prior work as a home health aide fell within the limits of light work, he held that plaintiff could return to that job and was therefore not disabled within the meaning of the Act:

In her past relevant work as home health aide which she did from 1989 to 1994, the claimant was required to lift a maximum of twenty pounds, stand and walk about six hours, and sit from one-half to one hour. Such activities as assisting clients with personal care activities, light cooking and similar activities are not precluded by the claimant's medically determinable impairments and such physical demands are within her current residual capacity. It is observed that the claimant described her work as a home health aide (Exhibit 14) as heavy work, however, her description of the work activities involved in performing these job tasks based on her hearing testimony demonstrated that this work was performed at the light work level. Given this discrepancy, I accept the claimant's hearing testimony as the accurate representation of the job

demands associated with her former work as a home health aide.

*Id.* at 14–15.[5] The ALJ rejected plaintiff's testimony regarding her pain. He said her claims were "disproportionate to the reported medical findings and the assessment from her own treating physicians." *Id.* at 13. He also found her not credible:

Her allegation of high blood pressure when the evidence shows she has same but that it is well controlled on his [sic] medication and her allegation that she suffers from severe abdominal pain when she previously told her doctors that her condition had improved following her surgery leads one to believe the claimant may be exaggerating the severity of her condition, and causes her to be less than a credible witness.

*Id.* at 13–14. Further, the ALJ wholly rejected the assessments by plaintiff's treating physicians:

I have carefully evaluated the residual functional capacity assessments offered by the claimant's physicians and find them totally unpersuasive and completely inconsistent with the weight of the totality of the evidence of record. The physical assessment signed by Drs. Lai and Todino cannot constitute any kind of substantial evidence based on the claimant's own hearing testimony which showed that she only saw Dr. Todino one time in April, 1995 and had only begun to see Dr. Lai a couple of months prior to that time. This assessment suggests functional limitations which are no-where supported by the claimant's

---

4. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting

factors such as loss of fine dexterity or inability to sit for long periods of time."

20 C.F.R. §§ 404.1567(b), 416.967(b).

5. Exhibit 14 is the Disability Report where plaintiff had written that her prior job had required her to lift 100 pounds maximum and up to 50 pounds frequently. The regulations define "heavy" work as "lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

medical treatment, frequency of clinical visits or results of diagnostic testing. The psychiatric assessment offered by Dr. Soto suffers from the same deficiencies. He only began seeing the claimant in December, 1994 and his progress notes clearly show that her depression is improved based on his own observations and the results of the medications prescribed.

*Id.* at 15 (citations omitted).

## DISCUSSION

 For purposes of the Act, a person is considered disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997).[6] That impairment must be of such severity that the person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

 The evidence that must be considered in determining whether an individual is disabled includes (1) objective medical facts; (2) diagnoses and medical opinions based on such facts; (3) subjective evidence of disability, including any pain experienced by the individual; and (4) his or her educational background, age and work history. *See* 20 C.F.R. §§ 404.1512(b),(c),

416.912(b),(c); *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 259 (2d Cir.1988); *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir.1983) (per curiam); *Balwant v. Apfel*, No. 96 Civ. 9282(SHS)(SEG), 1999 WL 33084, at *5, 1998 U.S. Dist. LEXIS 20754, at *16 (S.D.N.Y. Jan. 7, 1999); *Toro v. Chater*, 937 F.Supp. 1083, 1085 (S.D.N.Y. 1996). The Commissioner shall consider "all evidence available in such individual's case record and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability" and "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i).

 The Commissioner is to give a treating physician's opinion on the nature and severity of the applicant's impairments "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the Commissioner determines that a treating physician's opinion is not entitled to controlling weight, he must nevertheless determine what weight to give it by considering (1) the length and nature of the treatment relationship and the frequency of examination; (2) the supportability of the opinion, *i.e.*, the extent to which the source presents relevant evidence, particularly medical signs and laboratory findings, to support the opinion; (3) consistency of

---

**6.** Since the standards for eligibility for Social Security Income benefits and judicial review thereof are virtually identical to the standards for Disability Insurance benefits, decisions rendered under 42 U.S.C. § 423 or under 42 U.S.C. § 1382c(a)(3) are applicable to both.

*Donato v. Secretary of Department of Health and Human Services*, 721 F.2d 414, 418 n. 3 (2d Cir.1983); *Hankerson v. Harris*, 636 F.2d 893, 895 n. 2 (2d Cir.1980); *Toro v. Chater*, 937 F.Supp. 1083, 1085 n. 2 (S.D.N.Y.1996).

the opinion with the record as a whole; (4) the specialization of the physician; and (5) any other relevant factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Schaal v. Apfel,* 134 F.3d 496, 503 (2d Cir.1998); *Schisler v. Sullivan,* 3 F.3d 563, 567–69 (2d Cir.1993); *see also Diaz v. Shalala,* 59 F.3d 307, 312–13 (2d Cir.1995). In addition, the Commissioner must "give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). *See Schaal v. Apfel,* 134 F.3d at 503–504. The Commissioner may rely on the opinions of other physicians, even nonexamining ones, but he must weigh the same factors as enumerated above for evaluating treating physicians' opinions and must generally give more weight to a treating source than a non-treating one and to an examining source than to a nonexamining one. 20 C.F.R. §§ 404.1527(d)-(f), 416.927(d)-(f).

■■■ With respect to a claimant's subjective complaints of pain, 42 U.S.C. § 423(d)(5)(A) provides, in pertinent part:

An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph... would lead to a conclusion that the individual is under a disability.

*See also* 20 C.F.R. §§ 404.1529, 416.929. When a medically determinable impairment exists that reasonably could be expected to produce the pain alleged, objective medical evidence must be considered in determining whether a disability exists whenever such evidence is available. 20 C.F.R. §§ 404.1529(b),

416.929(b). If symptoms suggest a greater impairment than can be shown by objective evidence alone, consideration also is to be given to other factors, including (1) the person's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and adverse side effects of medication that the person has taken to alleviate the symptoms; (5) treatment, other than medication, for relief of pain or other symptoms; and (6) any measures which the person uses or has used to relieve the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility. *See* Soc. Sec. Rul. 96–7p, 61 Fed.Reg. 34,483 (1996), 1996 WL 374186(S.S.A.); *Aponte v. Secretary, Department of Health and Human Services,* 728 F.2d 588, 591–92 (2d Cir.1984); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979). However, the judge must set forth his or her reasons "with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984); *see Lugo v. Apfel,* 20 F.Supp.2d 662, 663–64 (S.D.N.Y.1998); *Toro v. Chater,* 937 F.Supp. at 1085.

■■■ The SSA has established a five-step sequence to be used in evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920. *See Sullivan v. Zebley,* 493 U.S. 521, 525, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Bowen v. City of New York,* 476 U.S. 467, 470, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). As explained by the Court of Appeals, the five steps are as follows:

First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities." 20 C.F.R. § 404.1520. If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998) (footnote omitted). The claimant bears the burden of proof as to the first four steps, and the Commissioner as to the fifth. *Id.; Diaz v. Shalala,* 59 F.3d 307, 311 n. 2 (2d Cir.1995); *Grubb v. Chater,* 992 F.Supp. 634, 638 n. 4, 639 (S.D.N.Y. 1998). "Residual functional capacity" to do work despite physical impairments is defined in the Commissioner's regulations by five categories: very heavy, heavy, medium, light and sedentary work. These categories are generally downwardly inclusive (*e.g.,* an individual who can perform medium work can also perform light and sedentary work).

The Commissioner's decision that a claimant is not disabled must be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Diaz v. Shalala,* 59 F.3d at 312; *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991); *Arnone v. Bowen,* 882 F.2d 34, 37 (2d Cir.1989). The Supreme Court has defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). *See Schaal v. Apfel,* 134 F.3d at 501; *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996); *Diaz v. Shalala,* 59 F.3d at 314; *Jones v. Sullivan,* 949 F.2d at 59; *Steinhardt v. Sullivan,* 752 F.Supp. 95, 97 (S.D.N.Y.1990). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen,* 859 F.2d at 258. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Quinones ex rel. Quinones v. Chater,* 117 F.3d 29, 33 (2d Cir.1997); *Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir.1990). However, the Commissioner's finding is to be sustained if supported by substantial evidence even where substantial evidence may also support the plaintiff's position and despite that the court's independent conclusion based on the evidence may differ from the Commissioner's. *Jones v. Sullivan,* 949 F.2d at 59; *Alston v. Sullivan,* 904 F.2d at 126; *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir.1982).

It is the function of the Commissioner, and not the reviewing court, to pass on the credibility of witnesses, including the claimant's description of symptoms and pain, and to resolve material conflicts in the testimony. *Richardson v. Perales,* 402 U.S. at 399, 91 S.Ct. 1420; *Aponte v. Secretary,* 728 F.2d at 591; *Carroll v. Secretary,* 705 F.2d 638, 642 (2d Cir.1983); *Reynoso v. Apfel,* No. 97 Civ. 2234(SAS), 1998 WL 61002, at *10, 1998 U.S. Dist. LEXIS 1549, at *31–*32 (S.D.N.Y. Feb.

11, 1998); *Davis v. Callahan*, No. 96 Civ. 9367(SAS), 1997 WL 438772, at *11, 1997 U.S. Dist. LEXIS 11256, at *34–*35 (S.D.N.Y. Aug. 4, 1997), *aff'd per curiam*, 145 F.3d 572 (2d Cir.1998); *Toro v. Chater*, 937 F.Supp. at 1086–87. The court's function is limited to assessing whether the Commissioner applied the proper legal standards in making a determination and whether that determination is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g), 1383(c)(3); *Schaal v. Apfel*, 134 F.3d at 501; *Beauvoir v. Chater*, 104 F.3d at 1433; *Arnone v. Bowen*, 882 F.2d at 37; *Castro v. Acting Commissioner of Social Security*, No. 97 Civ. 5364(DLC), 1998 WL 846749, at *7, 1998 U.S. Dist. LEXIS 18973, at *21–*22 (S.D.N.Y. Dec. 2, 1998); *Toro v. Chater*, 937 F.Supp. at 1087.

▮ Applying these standards to the record herein, I find there is not substantial evidence to support the ALJ's finding that plaintiff can return to her previous work as a home health aide. Key to the ALJ's decision was his finding that in her work, "claimant was required to lift a maximum of 20 pounds." R. at 14. Having found that plaintiff had the residual physical capacity to perform "light" work, which "involves lifting no more than twenty pounds," 20 C.F.R. §§ 404.1567(b), 416.967(b), the ALJ thus concluded plaintiff could perform her previous work. The ALJ acknowledged that in her disability application (Disability Report, R. at 106) plaintiff's description of her work met the regulatory definition of "heavy," in that she had said her job required her to lift up to one hundred pounds. The ALJ stated, however, that her testimony at the hearing demonstrated that the work was in fact light, and he credited her hearing testimony over her statements in the Report. R. at 15. The Commissioner defends the ALJ's decision herein by asserting that

plaintiff testified at her hearing that "the heaviest weight she lifted or carried was less than twenty pounds." Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings ("Comm.Mem.") at 22.

But the ALJ and the Commissioner have apparently overlooked a distinction in plaintiff's testimony between the amount of weight she had to lift or bear in her previous job and the amount she had to carry. The ALJ's questions and plaintiff's answers included as follows:

Q ...what would have been the heaviest amount of weight that you normally had to lift and carry in order to be able to perform your job on a day-to-day basis?

A When I had to carry the groceries. They didn't permit us to grab or lift anything heavy in the apartment.

Q What was the heaviest amount of weight that you lifted and carried? Was it less than twenty pounds?

A Less than twenty pounds.

R. at 32. The Disability Report had asked "heaviest weight lifted," to which she had answered "Assist patients...100 lbs.," and "weight frequently lifted/carried," to which she had answered "up to 50 lbs." When asked about this at the hearing, she responded, "A hundred pounds is a lot," and "I would never be able to lift one hundred pounds."

In the context of plaintiff's work, the difference between lifting and carrying is obvious and crucial.[7] As a home health aide plaintiff would assist patients to get up and to walk, but not actually carry them. The plaintiff herself drew this distinction in responding to one of her counsel's questions after she had testified she could not return to the job because she

---

7. To "lift" is to "raise from a lower to a higher position: move away from the pull of gravitation: elevate," while to "carry" is to "move while supporting: move an appreciable distance without dragging: sustain as a burden or load and bring along to another place." *Webster's Third New International Dictionary of the English Language* (Unabr.1993).

would not be able to lift anybody any more:

> ATTY: Did you used to lift and carry patients?
>
> CLMT: I had to lift them from the bed and put them on wheelchairs.
>
> ATTY: And how much did they weigh?
>
> CLMT: Sometimes around a hundred fifteen pounds but now I don't have the strength.

*Id.* at 52. The ALJ, however, rather than pursuing the point raised, argued with plaintiff's counsel that the foregoing testimony was "at the [sic] variance with her prior testimony" and that plaintiff had testified "that her job didn't require her to lift more than twenty pounds." *Id.* The ALJ simply overlooked the difference between carrying and assisting a patient out of bed or bath, for example, by pulling the patient and bearing a significant amount of that patient's weight. Moreover, the ALJ left unmentioned plaintiff's testimony that she was now capable of lifting no more than five pounds.

 Plaintiff's testimony describing the requirements of her job is further supported by the guidelines of the Department of Labor. A review of the *Dictionary of Occupational Titles*, Dep't of Labor § 354.377–014 (4th ed. rev.1991), lists the job duties of a home health aide as, *inter alia*, "Assist[ing] patients into and out of bed, automobile, or wheelchair, to lavatory, and up and down stairs...to dress, bathe, and groom self [sic]." The *Dictionary of Occupational Titles* classifies jobs, by their exertional requirements, into the same categories as the SSA regulations: very heavy, heavy, medium, light and sedentary. The job of home health aide is classified as *medium, not as light.* While an ALJ is not wholly required to apply the Department of Labor's strength categories to an occupation and may find that a particular job of a particular claimant actually required a lesser exertional level, there is no evidence in the record in this case to support the ALJ's finding, contrary to the Department of Labor's

guidelines and to plaintiff's own testimony, that her work only required the exertional capacities of light work. Indeed, common sense and experience confirm that work as a home health aide requires a good deal of strength and stamina.

Furthermore, the *Dictionary of Occupational Titles* makes the difference between lifting and carrying plain:

> Lifting—Raising or lowering an object from one level to another (includes upward pulling).

> Carrying—transporting an object, usually holding it in the hands or arms, or on the shoulder.

> \* \* \* \* \* \*

> Lifting, pushing, and pulling are evaluated in terms of both intensity and duration. Consideration is given to the weight handled, position of the worker's body, and the aid given by helpers or mechanical equipment. Carrying most often is evaluated in terms of duration, weight carried, and distance carried.

*Id.* at 1012. The only Residual Functional Capacity Questionnaires in the record assessing plaintiff's strength are that of Drs. Lai/Todino and that of Dr. Levit, the SSA's nonexamining consultant. Interestingly, the form filled out by Dr. Levit asks how much a claimant can "lift and/or carry." R. at 80. The form completed by Drs. Lai and Todino asks in separate questions how much the claimant can lift and how much the claimant can carry. R. at 168. The form used by Dr. Levit shows at the bottom that it is an SSA form questionnaire printed in January 1989, while that used by Drs. Lai and Todino was printed in April 1993. Finally, I would note that the SSA itself directs its employees in Social Security Ruling 96–8p, 61 Fed.Reg. 34,474, 34,477 (1996), 1996 WL 374184 (S.S.A.), at *5, as follows:

> Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform

each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately (e.g., "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours"), even if the final RFC assessment will combine activities (e.g., "walk/stand, lift/carry, push/pull"). Although the regulations describing the exertional levels of work and the Dictionary of Occupational Titles and its related volumes pair some functions, it is not invariably the case that treating the activities together will result in the same decisional outcome as treating them separately.

It is especially important that adjudicators consider the capacities separately when deciding whether an individual can do past relevant work.

As the ALJ's determination that plaintiff could perform her job as home health aide depended upon a misinterpretation of her evidence and a failure to develop the testimony properly to determine what plaintiff meant in her answers as to the requirements of lifting as distinct from the requirements of carrying in that job, it cannot be upheld.

■■■■ At step four of the five-step regulatory analysis of 20 C.F.R. §§ 404.1520 and 416.920, the SSA determines whether a claimant can return to his or her past job. Given his conclusion that plaintiff could return to her previous work, the ALJ's analysis did not proceed further. The case, thus, is to be remanded to the Commissioner. *See, e.g., Tejada v. Apfel,* 1999 WL 64710, at *6, 1999 U.S.App. LEXIS 1824, at *17 (2d Cir. Feb. 10, 1999); *Hilton v. Apfel,* No. 97 Civ. 1613(SS), 1998 WL 241616, at *12–*13, 1998 U.S. Dist. LEXIS 6786, at *36–*38 (S.D.N.Y. May 13, 1998); *Felicie v. Apfel,* No. 95 Civ. 2832(LAP), 1998 WL 171460, at *5–*7, 1998 U.S. Dist. LEXIS, at *15–*21 (S.D.N.Y. April 13, 1998). Further, upon remand the ALJ is to redetermine plaintiff's physical and mental ability to do work. This is so because thorough review of the record does not reveal substantial evidence for the ALJ's conclusion that plaintiff has the capacity to do even light work. The ALJ did not explain the basis for his determination. As noted, he rejected the opinion of her treating physicians Drs. Lai and Todino that plaintiff could stand for no more than two hours and sit for no more than one in an eight-hour workday and could lift no more than five pounds. The ALJ gave his reasons for this rejection, as required by 20 C.F.R. § 416.927(d), to be the small number of contacts they had with plaintiff, the absence of supporting diagnostic test data and the type of treatments they prescribed. Once the evidence from Drs. Lai and Todino is discounted, though, other relevant evidence is sparse. The ALJ made no mention of those doctors' opinion that plaintiff's physical ailments could reasonably be expected to produce the pain alleged. The report from Ponce District Hospital barred plaintiff from lifting only heavy weights, but that report was a discharge report pertaining to her surgery and could not take into account her later development of pain at issue here. Dr. Geraldo did not comment on plaintiff's ability to lift and carry and stated she could stand and walk only "as tolerated." R. at 158–59. The only medical opinion supporting the ALJ's finding that plaintiff could perform light work was the SSA consultant Dr. Levit's RFC form, stating that plaintiff could occasionally lift and/or carry fifty pounds, lift and/or carry twenty-five pounds regularly, and sit, stand or walk six hours at a time. R. at 80. The ALJ, however, did not refer to Dr. Levit's assessment in his decision. In any event, while the ALJ is permitted to rely on the report of a nonexamining SSA consulting physician, he must explain his decision in terms of the factors set forth in the regulations, including treating relationship and evidence presented in the opinion. *See* 20 C.F.R. §§ 404.152 7(d)-(f); 416.927(d)-(f). There is an obvious problem in rejecting the opinions of plaintiff's treating physicians because they had only been seeing

plaintiff for a few months and then accepting the opinion of Dr. Levit who never saw plaintiff at all.

The ALJ ignored plaintiff's own testimony, consistent with the opinions of Drs. Lai and Todino, that she could lift no more than five pounds and was required to lie down during the day. He did not ask about her capacity to stand or sit. Presumably this was part of his general rejection of plaintiff's credibility. But, while the ALJ set forth, as required, his reasons for doubting plaintiff's testimony, these reasons do not stand up to examination. He stated:

> Her allegation of high blood pressure when the evidence shows she has same but that it is well controlled on his [sic] medication and her allegation that she suffers from severe abdominal pain when she previously told her doctors that her condition had improved following her surgery leads one to believe the claimant may be exaggerating the severity of her condition, and causes her to be less than a credible witness.

R. at 13–14. With respect to the first point, plaintiff had listed high blood pressure on her application simply as one of her conditions in answer to the question asking for physical or mental limitations. The fact that she had the condition is indisputable. Yet she did not mention it at all in her testimony and, on the contrary, stated plainly that, if it were not for her abdominal and back pain, she could return to work. *Id.* at 43. Plaintiff's "allegation" of high blood pressure was true, and her credibility should not be questioned for positions she did not take. It appears the ALJ, for lack of a basis for his overall

decision, was just reaching for some support. As for the plaintiff's statements to her doctors, the only evidence cited by the Commissioner in his brief herein in support of the ALJ's characterization is a statement by plaintiff in June 1994 that she was a little better than she had been in April, two months after the surgery, and a report of a "subjective improvement" in an April 1995 visit to a clinic which, in context, seems to refer to a sore throat and congestion of which she had complained on her previous visit. *See* Comm. Mem. at 19; R. at 134, 175. These statements do not conflict with anything in her hearing testimony.[8]

## CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings should be denied and this case be remanded to the Commissioner for further proceedings. Upon remand, the Commissioner should, pursuant to his required duties under the regulations, assure that he has developed a complete medical record and, on the basis of it and plaintiff's testimony, redetermine in a manner consistent with the principles set forth herein whether plaintiff is capable of performing her past work. If he determines she is not able to perform that work, he should proceed to step five of the regulatory analysis to determine whether there is other work in the national economy that plaintiff is able to perform despite her limitations.

March 18, 1999.

---

8. Apart from the absence of substantial evidence to support his finding of no disability, the ALJ may have failed to fulfill his duty to fully develop the record. Absent is any statement as to the question of plaintiff's disability from Dr. Rocker, who plaintiff said was her primary treating physician for many years and had been treating her until several months before the hearing. The ALJ can hardly discount in their entirety the findings and opinions of those treating physicians who were part of the same clinic as her primary treating physician on the ground that they had not been seeing her long enough, yet fail to request information from the physician who had. As discussed above, the ALJ had a duty to "develop a complete medical history of at least the preceding twelve months" and to "obtain from the individual's treating physician...all medical evidence, including diagnostic tests, necessary in order to properly make [a] determination...." 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i).