Sherry A. WELLS, Plaintiff,

v.

Carolyn W. COLVIN, Acting
Commissioner of Social
Security, Defendant.

No. 13–CV–6593 EAW.

United States District Court,
W.D. New York.

Signed Feb. 24, 2015.

Peter A. Gorton, Lachman & Gorton, Endicott, NY, for Plaintiff.

Kathryn L. Smith, U.S. Attorney's Office, Rochester, NY, Rebecca Hope Estelle, Sandra M. Grossfeld, Social Security Administration, New York, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

## I. INTRODUCTION

Plaintiff Sherry A. Wells ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Plaintiff's application for disability insurance benefits. (Dkt. 1). Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Elizabeth W. Koennecke was not supported by substantial evidence in the record and was based on erroneous legal standards.

Presently before the Court are the parties' opposing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 9, 12). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Thus, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion (Dkt. 9) is denied. Plaintiff's complaint is dismissed with prejudice.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Overview

On September 15, 2010, Plaintiff protectively filed an application for disability insurance benefits. (Administrative Transcript (hereinafter "Tr.") 120–34). In her

application, Plaintiff alleged a disability onset date of June 28, 2010. (Tr. 122, 129, 165). Plaintiff alleged the following disabilities: uncontrolled diabetes, anorexia, chronic diarrhea, generalized weakness, and depression. (Tr. 170). Plaintiff's application was denied on December 23, 2010. (Tr. 10).

On April 2, 2012, Plaintiff, represented by counsel, testified at a video hearing before ALJ Koennecke. (Tr. 25–49). On June 21, 2012, the ALJ issued a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 7–24).

On September 27, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6). On November 1, 2013, Plaintiff filed this civil action appealing the final decision of the Commissioner. (Dkt. 1).

### B. The Non–Medical Evidence

Plaintiff was 44 years old at the time of the hearing. (Tr. 30). Plaintiff graduated from high school and had an associate's degree in applied science. (Tr. 30, 171). Plaintiff had previously worked as a cashier, manager, packager, teacher's assistant, medical assistant, and phone operator. (Tr. 171, 185).

At the hearing, Plaintiff claimed that she was alleging disability due to diabetes, fibromyalgia, depression, anxiety, and chronic fatigue syndrome. (Tr. 30). Plaintiff stated that she last worked as a store manager for Dollar General, but that she stopped working in June 2010 because she was unable to work the long hours and her doctor pulled her out of work. (Tr. 31–33).

Plaintiff testified that she was only able to perform physical activity for short periods of time before needing to rest, and

that she had a difficult time concentrating to complete a mental task. (Tr. 33).

At the time of the hearing, Plaintiff was living with her sixteen year old son. (Tr. 34). Before that, her mother had also lived with her and had helped with household chores. (Tr. 35). Plaintiff testified that she had trouble washing dishes, vacuuming, or doing laundry because her arms would get tired. (Tr. 37–38). Plaintiff stated that she and her son mostly ate frozen dinners because she could not stand long enough to prepare a meal. (Tr. 39).

Plaintiff stated that she had depression and would often sit in her room and cry. (Tr. 34–35). Plaintiff testified that her depression and anxiety kept her from engaging in work because she lacked the confidence to complete a task. (Tr. 44). She had been hospitalized for anxiety and depression for five to six days. (Tr. 46).

Plaintiff stated that she could stand for approximately 20 minutes before needing to rest, and could walk for fifteen to twenty minutes without something to hold onto or lean on (*i.e.*, a shopping cart). (Tr. 40). She could only sit for approximately one half hour before needing to reposition herself or lie down. (Tr. 41).

Plaintiff testified that she used to participate in her church choir but could no longer do that because she could not stand through the rehearsals or for the full services. (Tr. 45).

Plaintiff testified that she was on Ativan for anxiety, oxycodone for fibromyalgia, and Effexor for depression. (Tr. 42–43).

### C. Summary of the Medical Evidence

The Court assumes the parties' familiarity with the medical record, which is summarized below.

From August 7, 2010, through August 10, 2010, Plaintiff was hospitalized at Arnot Ogden Medical Center ("AOMC") for

treatment of her diabetes. (Tr. 264–66). Plaintiff was discharged in stable condition and was directed to adopt a diabetic diet and follow up with a primary care physician. (*Id.*).

On September 8, 2010, Plaintiff treated with nurse practitioner Christine Pesesky, who diagnosed type I diabetes, uncontrolled; hyperlipidemia; and chronic kidney disease, stage I. (Tr. 377).

Plaintiff was hospitalized at various times from October 20, 2010, through November 30, 2010, following complaints of abdominal pain and issues with her diabetic treatments. (Tr. 241–44, 281–310, 564–65). Plaintiffs varied diagnoses from these hospitalizations included abdominal pain, possibly due to irritable bowel syndrome; diabetes, poorly controlled; hypertension, poorly controlled; chronic fatigue syndrome; depression; hypokalemia; and microscopic colitis. (Tr. 287, 289, 309–10).

On December 8, 2010, Plaintiff followed up with Ms. Pesesky to discuss her diabetes and abdominal pain. (Tr. 488). Ms. Pesesky diagnosed uncontrolled diabetes and ordered lab work. (Tr. 490).

On December 9, 2010, Dr. Look Persaud completed a consultative internal medicine examination. (Tr. 311–15). Dr. Persaud diagnosed diabetes mellitus, poorly controlled, with possible early diabetic neuropathy of the feet; a history of constipation, diarrhea, loss of appetite, and weight loss; generalized chronic fatigue and tiredness; and hypertension. (Tr. 314). Dr. Persaud opined that Plaintiff had mild restrictions in squatting and moderate restrictions in lifting, carrying, pushing, and pulling. (Tr. 315).

Plaintiff also visited Dr. Sara Long for a consultative psychiatric examination on December 9, 2010. (Tr. 316–20). Dr. Long diagnosed Plaintiff with an adjustment disorder with depression and anxiety. (Tr. 319). She noted that she could not rule out an eating disorder, but did not diagnose one. (*Id.*). Dr. Long found that the results of her examination were "consistent with psychiatric problems which may interfere with [Plaintiff's] ability to function on a regular basis." (Tr. 318). Nonetheless, Dr. Long opined that Plaintiff was able to follow and understand simple directions and instructions and perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; perform complex tasks independently; make appropriate decisions; relate adequately with others; and adequately manage stress. (*Id.*).

On December 17, 2010, Dr. Altmansberger, a state agency psychologist, reviewed the record and concluded that Plaintiff did not have a severe mental impairment. (Tr. 321–26).

Plaintiff was hospitalized from December 18, 2011, through December 20, 2011, for treatment of abdominal pain and uncontrolled diabetes. (Tr. 386–87). Plaintiff was diagnosed with mild diabetic ketoacidosis. (Tr. 387).

On January 11, 2011, Plaintiff treated with Dr. Maygoe Sheehan at Orchard Family Health Center ("OFHC"). (Tr. 348–50). Plaintiff complained of pain and coldness in her feet, anorexia, lethargy, and abdominal pain. (Tr. 345). Dr. Sheehan diagnosed diabetes and generalized abdominal pain. (Tr. 347). Dr. Sheehan noted that Plaintiff's symptoms were related to poor diabetes control. (*Id.*).

Plaintiff followed up with Dr. Sheehan on January 25, 2011, reporting dizziness/lightheadedness and body aches. (Tr. 348). Dr. Sheehan noted a history of fibromyalgia and that Plaintiff had a prescription for Lyrica. (*Id.*). Dr. Sheehan diagnosed diabetes and fibromyalgia. (Tr. 350).

On January 4, 2011, Plaintiff visited Dr. W.M. Howard at OFHC for joint pain and muscle aches. (Tr. 351–53). Plaintiff claimed that the pain started in December 2010. (Tr. 351). Dr. Howard noted that Plaintiff had high blood pressure, a "disheveled" appearance, and was tearful. (Tr. 351–52). Dr. Howard diagnosed muscle aches and major depression. (Tr. 352). Plaintiff was prescribed Prisitq and Oxycontin. (*Id.*).

On February 9, 2011, Plaintiff treated with Dr. Sheehan, reporting pain, fatigue, anxiety, crying, and depression. (Tr. 354). Plaintiff appeared tired, thin, anxious, agitated, and tearful. (Tr. 355). Dr. Sheehan diagnosed fibromyalgia and prescribed a weaning dose of Oxycontin. (*Id.*).

Plaintiff was hospitalized from February 12, 2011, through February 16, 2011, at St. Joseph's Hospital for dizziness and depression. (Tr. 420–27). Plaintiff admitted that she was noncompliant with her diabetes medications. (Tr. 424). Plaintiff was diagnosed with major depressive disorder, orthostatic hypotension, suspect autonomic dysfunction from diabetes, fibromyalgia syndrome, hyperglycemia, and hyponatremia. (Tr. 421, 424).

On February 23, 2011, Plaintiff visited Dr. Sheehan, who diagnosed Plaintiff with fibromyalgia and prescribed Oxycodone, Ambien, and Ativan. (Tr. 359).

Plaintiff followed up with Ms. Pesesky on February 24, 2011, for treatment of her diabetes. (Tr. 485–87). Ms. Pesesky diagnosed diabetes and ordered lab work. (Tr. 487).

On March 2, 2011, Plaintiff treated with Dr. Sheehan. (Tr. 360–62). Plaintiff had doubled her Ativan dose to treat her anxiety and reported panic attacks and palpitations. (Tr. 360). Dr. Sheehan diagnosed fibromyalgia, anxiety, and sinus tachycardia, increased Plaintiff's Ativan dosage,

and referred Plaintiff to a cardiologist. (Tr. 362).

On March 9, 2011, Plaintiff visited social worker James Trainor at Family Services of Chemung County—Mental Health Services. (Tr. 496–502). Plaintiff reported depression, low energy, stress, poor sleep, and appetite disturbance. (Tr. 496, 498). Mr. Trainor diagnosed Plaintiff with depressive disorder not otherwise specified. (Tr. 499).

Plaintiff was hospitalized at St. Joseph's Hospital from March 22, 2011, through March 24, 2011, complaining of a headache after a fall. (Tr. 428–39). Plaintiff was diagnosed with syncope, depression, uncontrolled diabetes, urinary tract infection, and thyroid nodule. (Tr. 428).

Plaintiff treated at St. Joseph's Hospital on April 4, 2011, for body aches, headache, and stressors. (Tr. 442). Plaintiff was diagnosed with fibromyalgia, treated with morphine, and discharged with a prescription for Percocet and a direction to follow up with her primary care doctor. (Tr. 443–44, 446).

On April 7, 2011, Plaintiff visited Dr. Sheehan, complaining of pain, palpitations, anxiety, and fatigue. (Tr. 363). Dr. Sheehan diagnosed Plaintiff with fibromyalgia, diabetes, now controlled, and tachycardia. (Tr. 365).

Plaintiff followed up with Dr. Sheehan on May 24, 2011. (Tr. 366). Dr. Sheehan noted that Plaintiff was now receiving her insulin through a pump. (Tr. 367).

On June 7, 2011, Plaintiff treated with Dr. Sheehan, who diagnosed varicose veins of the lower extremities with edema, fibromyalgia, and abnormal weight gain attributable to better glucose control. (Tr. 370–71).

Plaintiff treated with Ms. Pesesky on June 23, 2011, who diagnosed diabetes without complications, essential hyperten-

sion, vitamin D and B12 deficiencies, and hyperlipidemia. (Tr. 483).

On June 27, 2011, Plaintiff treated with Dr. Sheehan, and noted that the Oxycontin was not helping her pain, and that she continued to have palpitations. (Tr. 372). Dr. Sheehan diagnosed fibromyalgia and tachycardia and increased Plaintiff's Oxycontin dosage. (Tr. 373–74).

On August 17, 2011, Plaintiff visited social worker Julie Manchester, reporting anxiety, depression, and low energy. (Tr. 504). Ms. Manchester diagnosed depressive order not otherwise specified. (Tr. 507).

The record contains various treatment notes from licensed therapist Amanda Pelcher dated August 24, 2011, through March 9, 2012. (Tr. 510–26).

On September 15, 2011, Plaintiff treated with Ms. Pesesky, reporting problems with her insulin pump. (Tr. 478). Ms. Pesesky recommended meter review and pump adjustment. (Tr. 480).

On October 4, 2011, Ms. Pesesky adjusted Plaintiff's insulin regimen and ordered lab work. (Tr. 477).

Plaintiff expressed concerns about weight gain with Ms. Pesesky on October 19, 2011, and Ms. Pesesky prescribed a blood sugar regulator to address these concerns. (Tr. 474).

From November 9, 2011, through November 14, 2011, Plaintiff was hospitalized for panic, tearfulness, poor sleep, and suicidal thoughts. (Tr. 384–85, 451–57). Plaintiff was diagnosed with diabetes, panic disorder, depression not otherwise specified, and major depressive disorder. (Tr. 385, 452).

On January 25, 2012, Plaintiff treated at AOMC for abdominal pain, nausea, and vomiting. (Tr. 572–76). Plaintiff stated that she had stopped using her insulin pump. (Tr. 572). Plaintiff was diagnosed with acute diabetic ketoacidosis secondary to medication noncompliance, history of hypertension, history of depression and anxiety, dyslipidemia, and diabetic neuropathy. (Tr. 573).

On March 5, 2012, Plaintiff visited Dr. Sheehan to complete Social Security paperwork. (Tr. 568–69). Dr. Sheehan completed a questionnaire and indicated a treating relationship that started in February 2010. (Tr. 463). Plaintiff was diagnosed with diabetes, fibromyalgia, and anxiety/depression. (Id.). Dr. Sheehan opined that Plaintiff needed to be able to rest frequently, and could sit for six hours per day with an option to alternate between standing and sitting. (Tr. 459). Dr. Sheehan stated that Plaintiff would be absent from work more than three days per month due to her limitations. (Id.). Dr. Sheehan opined that Plaintiff could never lift five pounds, but could lift up to five pounds for three hours per day. (Tr. 460). Dr. Sheehan noted "more than slight" limitations with regard to concentration and persistence. (Tr. 461).

At a follow up appointment on March 7, 2012, Ms. Pesesky instructed Plaintiff to perform testing of her insulin meter. (Tr. 470–71).

On March 13, 2012, Ms. Pesesky assessed uncontrolled diabetes, hypertension, vitamin D deficiency, and hyperlipidemia. (Tr. 466).

On April 22, 2012, Dr. Sheehan completed a questionnaire stating that Plaintiff had experienced chronic pain and extreme fatigue for years. (Tr. 577).

In a letter dated April 26, 2012, Dr. Sheehan requested an extension to review lab work and complete a "definitive diagnosis" of Plaintiff's disability. (Tr. 578). The record contains no additional records from Dr. Sheehan.

## III. DISCUSSION

### A. Standard of Review

■ This Court has jurisdiction to review the final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c)(3). "In reviewing a decision of the Commissioner, the Court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing.'" *Emerson v. Comm'r of Soc. Sec.*, No. 12 Civ. 6451(PAC)(SN), 2014 WL 1265918, at *9 (S.D.N.Y. Mar. 27, 2014) (quoting 42 U.S.C. § 405(g)). 42 U.S.C. § 405(g) directs the Court to accept findings of fact made by the Commissioner, so long as the findings are supported by substantial evidence in the record. Substantial evidence is "more than a mere scintilla," and "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987).

■ Therefore, the scope of the Court's review is limited to determining whether the Commissioner applied the appropriate legal standards in evaluating the plaintiff's claim, and whether the Commissioner's findings were supported by substantial evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (stating that a reviewing Court does not examine a benefits case *de novo* ). If the Court finds no legal error, and that there is substantial evidence for the Commissioner's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater*, 77 F.3d 41, 46–47 (2d Cir.1996).

■ Judgment on the pleadings may be granted under Rule 12(c) where the "material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988).

### B. Determining Disability Under the Social Security Act

■ The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see Rembert v. Colvin*, No. 13–CV–638A, 2014 WL 950141, at *6 (W.D.N.Y. Mar. 11, 2014). A disabling impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). The burden is on the claimant to demonstrate that he is disabled within the meaning of the Act. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir.2002). The individual will only be declared disabled if his impairment is of such severity that he is unable to do his previous work and cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In making the disability determination, the ALJ follows a five-step sequential analysis. If the ALJ makes a determination at any step, the evaluation will not continue to the next step. 20 C.F.R. § 416.920(a)(4). The following five steps are followed:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir.2000); *see* 20 C.F.R. §§ 404.1520, 416.920.

## C. Analysis of the ALJ's Sequential Evaluation

### 1. Step One: Substantial Gainful Activity

In applying the five-step sequential analysis at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 28, 2010, the date of her application. (Tr. 13). The parties do not contest this determination and it is supported by substantial evidence.

### 2. Step Two: Severe Impairments

At the second step, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, fibromyalgia, and adjustment disorder. (*Id.*). The ALJ also noted that Plaintiff had "stomach complaints," but found this to be a non-severe impairment because there was no definitive chronic diagnosis in the record. (Tr. 14).

Plaintiff argues that the ALJ improperly failed to find that her abdominal conditions and chronic fatigue syndrome were severe impairments. (Dkt. 9–1 at 9–11).

#### a. Abdominal Condition

Plaintiff contends that the ALJ erred by failing to consider her abdominal conditions to be a severe impairment and by not incorporating this impairment into her RFC finding. (*Id.* at 9–10). Plaintiff notes that the record contains evidence that she suffers from abdominal pain, chronic diarrhea, and bouts of constipation. (*Id.*). Dr. Persaud's opinion noted Plaintiff's claims of constipation alternating with diarrhea. (*Id.* at 10). Plaintiff contends that this condition caused more than a *de minimis* impact on her ability to work, and that the ALJ should have considered the number of bathroom breaks Plaintiff would require per day in formulating her RFC. (*Id.* (citing *Compston v. Astrue*, No. 2:10–cv–818, 2011 WL 4360106, at *11 (S.D.Ohio July 18, 2011) ("The ALJ, how-

ever, made no specific findings concerning the frequency and duration of Plaintiff's bathroom usage.")")). The Commissioner argues that the ALJ was not required to consider Plaintiff's abdominal condition a severe impairment because it was not a medically determinable impairment. (Dkt. 12–1 at 22).

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment...." 20 C.F.R. § 404.1505. It was not a legal error for the ALJ to conclude, based on a review of the record, that Plaintiff's abdominal complaints did not constitute a medically determinable impairment. Plaintiff does not have a definitive diagnosis for her complaint.

"Unless [an] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. The record shows that Plaintiff complained of abdominal symptoms from November 30, 2010, through January 11, 2011, and again in January 25, 2012. (Tr. 241–44, 281–315, 345–47, 386–87, 488–90, 564–65, 572–76). As a result, Plaintiff has not demonstrated that she has experienced disabling abdominal symptoms for a continuous period of at least 12 months, and it was not an error for the ALJ to find that this was not a severe impairment.

### b. Chronic Fatigue Syndrome

■ Plaintiff contends that the ALJ should have considered her chronic fatigue syndrome to be a severe impairment because she has been diagnosed with the condition. (Dkt. 9–1 at 11 (citing Tr. 287, 291, 442)). The Commissioner argues that the ALJ was not required to consider Plaintiff's alleged chronic fatigue syndrome as a severe impairment because the only physician in the record to diagnose this condition was an emergency room doc-

tor who did so after a normal examination based on Plaintiff's own reported history. (Dkt. 12–1 at 22 (citing Tr. 287)). This is an accurate assessment of the record. Absent a diagnosis supported by an independent evaluation, Plaintiff is unable to show that her chronic fatigue syndrome is a medically determinable impairment. "The Social Security regulations have long recognized that subjective symptomology is not, standing alone, sufficient to establish the existence of a disability." *Greene v. Colvin,* 936 F.Supp.2d 216, 227 (W.D.N.Y. 2013) (citing 20 C.F.R. §§ 404.1529(a), 416.929(a)). Accordingly, the ALJ did not err in finding that Plaintiff's alleged chronic fatigue syndrome was not a severe impairment.

### 3. Step Three: Listed Impairments

At the third step, the ALJ analyzed the medical evidence and found that Plaintiff did not have a listed impairment or combination of impairments that would render her disabled. (Tr. 14–15). Specifically, the ALJ considered listings 9.00 and 12.04. (*Id.*). The ALJ found that Plaintiff's alleged endocrine disorder did not satisfy the necessary criteria of any listing under 9.00. (Tr. 14). The ALJ then walked through the psychiatric review technique and concluded that Plaintiff's mental impairments did not satisfy listing 12.04. (*Id.*). Plaintiff does not specifically contest this finding, but rather argues that her combination of impairments should have led to an RFC finding that she was disabled, as discussed below. (Dkt. 9–1 at 11–20).

### 4. Step Four: The ALJ's Determination of RFC

At the fourth step, the ALJ determined Plaintiff's residual functional capacity to perform work. (Tr. 15–18). The ALJ

concluded that Plaintiff had the following RFC:

> [t]o perform sedentary work as defined in 20 CFR 404.1567(a) and she retains the ability (on a sustained basis) to frequently understand, carry out, and remember moderately complex instructions; to frequently respond appropriately to supervision, co-workers and usual work situations; and to frequently deal with changes in a routine work setting.

(Tr. 15–16).

### a. Credibility Determination

ALJ Koennecke recognized that Plaintiff's medically determinable impairments could cause her alleged symptoms. (Tr. 17). However, the ALJ found that the record and Plaintiff's testimony did not support a finding that these impairments were disabling. (*Id.*).

The Social Security regulations require a two-step process for the ALJ to consider the extent to which subjective evidence of symptoms can reasonably be accepted as consistent with the medical and other objective evidence. *Brownell v. Comm'r of Soc. Sec.*, No. 1:05–CV–0588 (NPM/VEB), 2009 WL 5214948, at *3 (N.D.N.Y. Dec. 28, 2009). First, the ALJ considers whether the medical evidence shows any impairment "which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 404.1529(a). Second, if an impairment is shown, the ALJ must evaluate the "intensity, persistence, or functionally limiting effects" of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(b). When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In evaluating a plaintiff's credibility, the ALJ must consider several factors, including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Stewart v. Barnhart*, 235 F.R.D. 579, 590 (W.D.N.Y.2006); *see* 20 C.F.R. § 404.1529(c).

■ In the instant case, the ALJ properly applied the two step analysis. The ALJ found that Plaintiff had medically determinable impairments that were likely to cause the alleged symptoms, but she found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible as they were inconsistent with the medical evidence. (Tr. 19).

For example, the ALJ noted that although Plaintiff claimed that she had significant exertional limitations, on examination Plaintiff was able to get on and off the

examination table and rise from a chair without difficulty. (Tr. 17). Plaintiff had a full range of motion in her spine, shoulders, elbows, wrists, hips, knees, and ankles. (*Id.*). Further, Plaintiff demonstrated full strength and grip strength on examination. (*Id.*).

The ALJ also acknowledged that Plaintiff alleged significant nonexertional limitations, but she found that the record demonstrated that Plaintiff had good social skills because she still participated in church activities and would go to Walmart to shop for craft goods. (*Id.*). Plaintiff contends that the ALJ's determination that Plaintiff had "no restriction" in her activities of daily living was erroneous and not supported by substantial evidence. (Dkt. 9–1 at 12–13). Plaintiff notes that she was hospitalized on two occasions for her mental condition, was depressed and tearful, and was unable to clean, cook, or do laundry without assistance. (*Id.*). Plaintiff also contends that the ALJ erred in finding that Plaintiff had "no difficulty" in social functioning in light of mental exams reporting on Plaintiff's depressed mood and the fact that she often stayed in bed and was "homebound." (*Id.* at 13–14 (citing Tr. 453–54)).

To the extent that Plaintiff contests the ALJ's findings with respect to her activities of daily living and social functioning, these arguments fail because the ALJ applied the appropriate legal standards in weighing Plaintiffs testimony and the evidence. Although it is true that "a claimant need not be an invalid to be found disabled," *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir.1998), it was proper for the ALJ to consider Plaintiff's social activities and activities of daily living to find that Plaintiff's impairments were not as disabling as Plaintiff suggested. "It is the function of the Commissioner, and not the reviewing court, to pass on the credibility of witnesses, including the claimant's description of symptoms and pain, and to resolve material conflicts in the testimony." *Echevarria v. Apfel,* 46 F.Supp.2d 282, 293 (S.D.N.Y.1999) (citing *Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). "[A]n ALJ's credibility determination is generally entitled to deference on appeal." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.2013).

■ ALJ Koennecke also found that Plaintiff's credibility was undermined by her noncompliance with medication and inconsistencies in following medical advice. (Tr. 17). Plaintiff argues that this was an improper assessment of Plaintiff's credibility because the ALJ did not consider Plaintiff's reasons for medication non-compliance, namely her financial difficulties with affording medications. (Dkt. 9–1 at 22–23). The Commissioner notes that Plaintiff obtained insurance in August 2010 (Tr. 376), and that Plaintiff received regular primary care treatment in September 2010 (Tr. 375–77), but nevertheless failed to be compliant with her medications. (Dkt. 12–1 at 24). Specifically, medical notes indicate that Plaintiff abused Ativan and Oxycontin, and that Plaintiff failed to test her blood sugar or follow a diabetic diet per the instructions of her physicians. (Tr. 345, 348, 354, 360, 375, 386, 424, 453, 468, 481, 572). Because the medical record shows that Plaintiff was noncompliant with medications and inconsistent in following medical advice even after she was insured and receiving regular treatment by a physician, the ALJ did not err in considering Plaintiff's noncompliance in evaluating Plaintiffs credibility. SSR 96–7p, 1996 WL 374186, at *7 (July 2, 1996) ("the individual's statements may be less credible ... if the medical reports or records show that the individual is not following the treatment as prescribed...."); *Thomas v. Colvin,* No. 13–CV–116S, 2014

WL 1219213, at *5 (W.D.N.Y. Mar. 24, 2014) (considering plaintiff's history of noncompliance and explanations for noncompliance in finding plaintiffs testimony was less than fully credible); *Shaw v. Comm'r of Soc. Sec.,* No. 7:11–cv–1463(GLS), 2013 WL 316616, at *8 (N.D.N.Y. Jan. 28, 2013) (finding ALJ's credibility determination was sufficiently specific and supported by substantial evidence where the record showed plaintiff's noncompliance with recommended treatments for diabetes and obesity).

### b. Substantial Evidence

#### i. Dr. Persaud

■ The ALJ assigned the opinion of Dr. Persaud "great weight." (Tr. 17). She noted that Dr. Persaud's opinion was more consistent with light work than sedentary work, but stated that she gave Plaintiff the "benefit of the doubt" in finding an RFC for sedentary work. (*Id.*).

Plaintiff argues that the ALJ misinterpreted Dr. Persaud's opinion because the ALJ stated that Dr. Persaud found no restriction in sitting, standing or walking (Tr. 16), while Dr. Persaud actually opined that "[b]ased on today's evaluation, there are restrictions to sitting, standing, and walking on even surfaces" (Tr. 315). (Dkt. 9–1 at 17). Plaintiff contends that this misinterpretation is reversible error because restrictions to "sitting, standing, and walking on even surfaces" supports the conclusion that Plaintiff is unable to perform sedentary work in light of the additional evidence in the record to support such limitations. (*Id.* at 17–18). The Commissioner counters that there must have been a typographical error in Dr. Persaud's opinion that there were "restrictions to sitting, standing, and walking on even surfaces," because Dr. Persaud later opined that there were no restrictions to walking on uneven terrain, up inclines,

ramps, and stairs. (Dkt. 12–1 at 23 (citing Tr. 315)).

In reviewing the entirety of Dr. Persaud's opinion, it is evident that the statement that "there are restrictions to sitting, standing, and walking on even surfaces" was likely intended to state that there were *no* such restrictions. Dr. Persaud's musculoskeletal examination was normal, with full range of motion in all extremities, and full strength in the upper and lower extremities on the neurologic examination. (Tr. 314). After the statement with respect to restrictions on even surfaces, Dr. Persaud opined that there were no restrictions to, *inter alia,* walking on uneven terrain, kneeling or crawling, bending, twisting, carrying, pushing, or pulling. (Tr. 315). In fact, Dr. Persaud generally found no restrictions in physical activities, with the exception of a mild restriction from squatting and moderate restrictions in lifting, carrying, pushing, and pulling. (*Id.*). In light of the entirety of Dr. Persaud's examination report and opinion, it was not an error for the ALJ to find that Plaintiff did not have restrictions in sitting, standing, or walking on even surfaces. *See Cook v. Comm'r of Soc. Sec.,* No. 1:10–CV–259 GTS/ATB, 2011 WL 1899299, at *5 n. 3 (N.D.N.Y. Jan. 3, 2011) (considering a physician's report despite a typographical error in the report, where the physician stated that plaintiff "showed signs of any atrophy…" and it was "clear from the context of the sentence" that the physician meant to say that plaintiff showed "no" signs of atrophy); *see also Van Valkenberg ex rel. B.G. v. Astrue,* No. 1:08–CV–0959 (DNH/VEB), 2010 WL 2400455, at *13 (N.D.N.Y. May 27, 2010)("Courts have found typographical errors to be harmless if it is obvious from the opinion as a whole that the error is typographical and not substantive.").

#### ii. Dr. Sheehan

The ALJ assigned the opinion of Dr. Sheehan "some weight." (Tr. 17). In April 2012, Dr. Sheehan "admitted that he did not know what [Plaintiff's] disability was." (Tr. 18). Dr. Sheehan was given additional time to supply records to support Plaintiff's claim, but failed to do so. (*Id.*). Plaintiff argues that this assessment of Dr. Sheehan's opinion violated the treating physician rule. (Dkt. 9–1 at 20).

 Treating physicians "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations...." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The "treating physician rule" requires the ALJ to give "controlling weight" to the opinion of a claimant's treating physician regarding "the nature and severity of [the claimant's] impairment(s) ... [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). As explained by the Second Circuit Court of Appeals:

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2). Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir.2004). An ALJ does not have to explicitly walk through these factors, so long as the Court can "conclude that the ALJ applied the substance of the treating physician rule ... and provide[d] 'good reasons' for the weight she gives to the treating source's opinion." *Id.*

Plaintiff argues that the ALJ committed a legal error by not discussing these factors or providing reasons for rejecting Dr. Sheehan's opinions with respect to Plaintiff's need for rest periods and likely absences. (Dkt. 9–1 at 20). The Commissioner maintains that the ALJ provided a reasonable explanation for declining to credit Dr. Sheehan's opinion with respect to Plaintiff's potential absence from work. (Dkt. 12–1 at 23).

Dr. Sheehan opined that Plaintiff would need to be able to rest frequently without restrictions and could sit for six hours per day if she was able to alternate between sitting and standing. (Tr. 459–63). The ALJ only assigned Dr. Sheehan's opinion some weight because Dr. Sheehan's opinion was not supported by his own records. (Tr. 18). The ALJ gave Plaintiff and Dr. Sheehan an opportunity to provide additional medical records to support his opinion, but no additional records were provided. (*Id*). Notably, Dr. Sheehan's medical examinations were largely normal, and did not implicate such restrictions. (Tr. 364, 367, 370, 373, 569). The ALJ was permitted to assign Dr. Sheehan's opinion less weight on these grounds, in favor of the opinions of consultative examiners that were supported by the medical record and physical examinations. *See Halloran*, 362 F.3d at 32 ("Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, ... the opinion of the treating physician is not afforded controlling weight where ... the treating physician issued

opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.") (internal citations omitted).

### iii. Dr. Long

The opinion of Dr. Long was given "great weight" because the ALJ determined that the opinion was based on Plaintiff's reported history as well as Dr. Long's own examination, and was supported by treatment notes in the medical record. (Tr. 18). Plaintiff argues that the ALJ's RFC finding that Plaintiff could carry out and remember complex instructions was directly contradicted by Dr. Long's opinion that Plaintiff could follow and understand simple directions and perform simple tasks. (Dkt. 9–1 at 12). Plaintiff contends that this was a fatal error because the ALJ assigned Dr. Long's opinion great weight, but contradicted the opinion in crafting her RFC. (*Id.*). The Commissioner counters that Dr. Long's opinion also concluded that Plaintiff could perform "complex" tasks, and therefore the opinion supports the ALJ's RFC determination. (Dkt. 12–1 at 23).

Dr. Long's opinion states that Plaintiff "is able to follow and understand simple directions and instructions and to perform simple tasks independently." (Tr. 318). However, this conclusion should not be interpreted to mean that Plaintiff is *only* able to perform simple tasks, as Plaintiff suggests. Indeed, Dr. Long further opined that Plaintiff "appears able to learn new tasks, perform *complex tasks* independently, make appropriate decisions, relate adequately with others, and is capable of adequate stress management." (*Id.*) (emphasis added). As a result, Dr. Long opined that Plaintiff could perform simple and complex tasks independently, and the ALJ did not reach an internally inconsistent RFC by assigning Dr. Long's opinion

great weight and incorporating complex tasks into the RFC.

### iv. Additional Statements

The ALJ noted that several individual statements were supplied in support of Plaintiff's claim that supported Plaintiff's subjective complaints. (Tr. 18). The ALJ assigned these statements "little weight" because they were provided by "sympathetic parties and they offer nothing in terms of objective medical evidence." (*Id.*). However, the ALJ stated that she adjusted her RFC to sedentary, as compared to light, work in view of these subjective complaints. (*Id.*). Plaintiff does not contest the ALJ's consideration of these additional statements.

### v. Concentration, Persistence, or Pace

Plaintiff also argues that the ALJ erred by making no allowance for a moderate limitation in concentration, persistence, or pace in her RFC determination despite assessing moderate difficulties during her psychiatric review technique. (Dkt. 9–1 at 14 (citing Tr. 14)). Plaintiff contends that the ALJ should have considered more than whether she would be capable of finding employment or physically performing a job; rather, the ALJ was required to also determine if Plaintiff could hold her job for a significant period of time in light of her limitations in concentration, persistence, or pace. (*Id.* at 15 (citing *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir.1986))). The Commissioner asserts that findings made by the ALJ during the psychiatric review technique at steps two and three are not related to the more detailed RFC finding at steps four and five. (Dkt. 12–1 at 25). Further, the Commissioner contends moderate limitations in concentration, persistence, and pace have been found consistent with an ability to complete moderately complex tasks. (*Id.* (citing *Boyer v. Astrue*, No. 09–4086–RDR, 2010 WL 745000, at \*4 n. 1 (D.Kan. Feb. 26, 2010))).

■. "An ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin,* 758 F.3d 146, 151 (2d Cir.2014) (citing *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995)). While the analysis at steps two and three concerns the *functional effects* of mental impairments, the RFC analysis at step four specifically considers *work-related* physical and mental activities in a *work* setting. *See Golden v. Colvin,* No. 5:12-cv-665 (GLS/ESH), 2013 WL 5278743, at *3 (N.D.N.Y. Sept. 18, 2013). As a result, a finding at steps two or three does not automatically translate to an identical finding at step four.

"If it can be shown that the itemized evidence which. led to the finding of a moderate limitation on 'concentration, persistence, or pace' was ignored during the RFC assessment, then this would be error." *Peryea v. Comm'r of Soc. Sec.,* No. 5:13–CV–0173 (GTS/TWD), 2014 WL 4105296, at *10 (N.D.N.Y. Aug. 20, 2014). Here, the ALJ made her determination based in part on the psychological assessment of Dr. Long, who found that Plaintiff had psychiatric problems which may impair her ability to function on a regular basis. (Tr. 318). Nevertheless, Dr. Long opined that Plaintiff was capable of performing complex tasks. (*Id.*). As a result, the ALJ's findings with respect to Plaintiff's mental limitations are supported by the medical evidence.

Given its deferential standard of review, the Court finds that the ALJ's findings at step two and step four with respect to Plaintiff's mental limitations are not sufficiently inconsistent to require remand.

## c. Past Relevant Work

As part of the fourth step of the sequential analysis, the ALJ determined that Plaintiff was capable of performing her past relevant work as a receptionist at a medical office. (Tr. 18). The ALJ referenced the Dictionary of Occupational Titles and noted that the job of receptionist is a sedentary exertion job. (Tr. 19). The ALJ further determined that Plaintiff's abilities far exceeded the mental demands of the position, and that as a result, the testimony of a vocational expert was not necessary to determine that there were jobs in the national economy for Plaintiff to perform. (*Id.*).

Plaintiff contends that the ALJ's conclusion that Plaintiff could perform her past relevant work as a medical receptionist was not supported by substantial evidence. (Dkt. 9–1 at 21). Plaintiff further argues that the ALJ should have consulted with a vocational expert in determining if Plaintiff could perform past relevant work because Plaintiff had significant non-exertional impairments, but this argument is incorrect. (*Id.* at 21).

■ In the fourth step of the sequential analysis, the ALJ considers whether the claimant can perform former relevant work. 20 C.F.R. § 404.1520(f). "A disability claimant bears the burden of proving that she cannot return to her past relevant work, either as it is performed it in the national economy, or as she actually performed it." *Peryea,* 2014 WL.4105296, at *10 (citing *Diaz v. Shalala,* 59 F.3d 307, 315 (2d Cir.1995)). "A vocational expert or other vocational evidence is only required at step five of the five step analysis once the Plaintiff has met her burden though step four." *Id.* (citing *Butts v. Barnhart,* 388 F.3d 377, 383–84 (2d Cir.2004)).

Here, Plaintiff did not meet her burden at step four. The ALJ determined that Plaintiff had an RFC for sedentary work,

and Plaintiff's past relevant work as a receptionist fit Plaintiff's RFC. Absent a legal error in calculating the RFC, and this Court has found none, the ALJ's conclusion that Plaintiff could perform her past relevant work is also supported by substantial evidence.

## IV. CONCLUSION

The Court has considered Plaintiff's remaining arguments and finds them to be without merit. For the foregoing reasons, the Commissioner's determination that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied. Plaintiffs complaint is dismissed with prejudice.

SO ORDERED.